IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| William Sussman, Lior Alon, John Doe and The Louis D Brandeis Center Coalition to Combat Anti-Semitism<br><br>Plaintiffs,<br><br>v.<br><br>Massachusetts Institute of Technology and Michel DeGraff<br><br>Defendants. | **JURY TRIAL DEMANDED**<br><br>Civil Action Case No.<br>1:25-cv-11826-RGS |

**MEMORANDUM OF LAW IN SUPPORT OF JOHN DOE'S MOTION FOR LEAVE TO PROCEED UNDER A PSEUDONYM**

INTRODUCTION

John Doe is a Jewish and Israeli Instructor at the Massachusetts Institute of Technology ("MIT"). He was recruited to MIT by a prominent professor ("Richard Roe") to perform research in the professor's laboratory as a postdoctoral associate. While working in Professor Roe's lab, Doe endured severe and pervasive anti-Semitic and anti-Israeli harassment, discrimination, and retaliation by students and Professor Roe. Doe was viciously harassed in his lab for being Jewish and Israeli and ultimately dismissed from his postdoctoral associate position expressly because the other members of the lab did not want to work with a Jew. In response to Doe reporting the anti-Semitism to MIT, Professor Roe has already retaliated in several ways, including by contacting professors at other universities to defame Doe and prevent him from obtaining tenured professorships. Doe has also been shoved against a wall by anti-Israeli protesters, targeted by a series of cyberattacks by his harassers, and subjected to discriminatory materials placed on his car

windshield (while no other cars in the parking lot had similar materials). Doe fears for his safety, the safety of his partner, and his mental health. He fears further retaliation that could impact his career, his reputation, and his new position in another MIT department. Therefore, Doe seeks to participate in this case as a plaintiff using a pseudonym based on his justified fear of further harassment and retaliation.

This Motion is supported by (1) the harassment, threats, cruelty, and retaliation Doe has already experienced, (2) MIT's deliberate indifference to the wrongful conduct Doe has experienced, (3) current threats and calls for violence against Jews and Israelis on MIT's campus, (4) overwhelming empirical evidence of the harassment and fear Jews on campuses nationwide are experiencing, and (5) Doe's declaration (an unredacted version of which Doe moves to file under seal) explaining his wholly justified fear for his safety and the safety of his partner and of further harassment and retaliation.

John Doe also proposes to use pseudonyms for the individuals who harassed and discriminated against him (e.g., Professor Roe and Student A and Student B).

Counsel for John Doe has met and conferred with counsel for the Defendants regarding the relief sought in this motion. Counsel for Defendant MIT does not consent to this motion. Counsel for Defendant Michel DeGraff has reserved its rights pending its review of the motion and supporting declaration. Both MIT and DeGraff consent to the filing of an unredacted version of Doe's declaration under seal.

## THIS LAWSUIT

John Doe is one of three individual plaintiffs, along with The Louis D Brandeis Center Coalition to Combat Anti-Semitism, that is seeking to require MIT to meet its

legal obligations to protect Jewish and Israeli students and employees from the rampant anti-Semitism on its campus.[1]

Doe's claims include (i) direct discrimination in violation of Title VI and Title VII of the Civil Rights Act of 1964 and Massachusetts General Laws, (ii) hostile environment in violation of Title VI and Title VII of the Civil Rights Act of 1964 and Massachusetts General Laws, (iii) retaliation in violation of Title VI and Title VII of the Civil Rights Act of 1964 and Massachusetts General Laws, (iv) intentional, reckless, and negligent infliction of emotional distress, (v) breach of contract, and (vi) breach of the implied covenant of good faith and fair dealing.

## FACTUAL BACKGROUND

### John Doe's Experience with Anti-Semitic Violence

John Doe is the grandson of Holocaust survivors. He grew up in Israel and lived through the horrors of the second intifada. Doe's teacher was among the civilians murdered in the terror attacks. When he was in the third grade, while sitting in class, he learned that a childhood friend had been killed in a terrorist attack.

In 2007, he was injured in a rocket attack while walking home from school.

In 2008, he was injured in a rocket strike in the parking lot of his school.

The following year, his school was closed for several weeks due to ongoing rocket fire. Doe was forced to leave the city temporarily and several of his classmates' homes were hit by rockets. Doe endured significant emotional and psychological trauma during that time.

---

[1] The other two named plaintiffs, Lior Alon and William Sussman, are not moving to proceed pseudonymously because their involvement in the events described in the Complaint is already a matter of public record and Mr. Sussman is no longer on the MIT campus.

On October 7, 2023, a childhood friend of Doe was kidnapped by Hamas and later murdered in captivity. On that day, a professor that Doe viewed as a role model was brutally murdered, along with his wife, by Hamas terrorists. Doe remains deeply affected by the atrocities of that day.

**John Doe Has Experienced Anti-Semitism on MIT's Campus**

Although anti-Semitism had been alive on the MIT campus for years, Jew hatred spiked sharply following the brutal terrorist attacks in Israel by Hamas on October 7, 2023. After October 7, the campus became a hotbed of anti-Semitic hate and lawlessness, where student groups celebrated the murderous rampage of October 7, demonstrators shouted for violence against Jews worldwide, students occupied buildings and interrupted classes with hateful anti-Semitic chants, an individual urinated on the window of the MIT Hillel Center (a room where Jewish students gather and pray daily), students erected encampments in the center of campus where Israeli Jews could not enter, students cheered for the terror group Hamas, and professors and students alike shunned, maligned and bullied Jews and Israelis with impunity. *See* Compl. ¶¶ 31-61.

The anti-Semitism problem at MIT has recently escalated to calls for violence *at MIT itself*. On April 18, 2025, students handed out "terror maps" of the MIT campus. *Id.* at ¶ 47. These maps marked which buildings had connections to the Jewish and Israeli communities and promoted violence against them with the phrases "From the river to the sea, Palestine will be free" and "Resistance is justified when people are colonized." *Id.* These maps inciting violence against Jews and Israelis at precise

campus locations were distributed widely to students on campus and via email. *Id.* at ¶ 48.

On July 6, 2025, The Stata Center, which houses MIT's Computer Science and Artificial Intelligence Laboratory (CSAIL), was defaced with anti-Israel graffiti, including the spray painting of "Death to the IOF."[2] *Id.* at ¶ 57. A radical group called the "Direct Action Movement for Palestinian Liberation" (DAMPL) claimed responsibility and posted that this was a "costly warning shot." DAMPL specifically named a top researcher at MIT for her work on technology allegedly used by the Israeli military. The posting made clear that this was a threat: "You are building weapons for an occupying army. We will meet you with forceful resistance, not polite requests. The resistance is alive, and knows exactly where you work." This does not appear to have been an idle threat—when a suspect was later arrested, officers found homemade explosives in his car. *Id.* at ¶ 57.

**John Doe Experienced Harassment and Discrimination in His Lab**

In addition to the general hostility and threats against Jewish and Israeli students and employees on campus, John Doe has individually been subjected to serious discrimination, harassment, cruelty, threats, violence, and retaliation. *Id.* ¶¶ 198-272. Doe is a Jewish and Israeli Instructor. He was recruited by a prominent professor to come to MIT as a postdoctoral associate to perform cutting edge experiments in the professor's laboratory. After a successful first year at MIT, Doe was targeted and harassed by new graduate students who joined his lab, because he

---

[2] "IOF" is a slur used by anti-Israeli activists, which refers to the "Israeli Defense Forces" as the "Israeli Occupation Forces."

was Jewish and Israeli. *Id.* ¶¶ 198-214. He was regularly subjected to vicious and hostile comments about Jews and Israelis. *Id.* ¶¶ 199-208, 212-213. Students spoke of creating a covert plan to destroy his relationship with his partner to prevent more Jewish babies. *Id.* ¶¶ 205-206. Students spread false rumors about Doe's purported cruelty during his Israeli military service even though Doe never actually served in the Israeli military. *Id.* ¶ 207. Professor Roe joined in the harassment, including by singling out Doe in front of a group as an example of someone who "cannot see the suffering of Palestinians" (even though Doe had never spoken of Palestinians or the situation in the Middle East with the professor or anyone else in the lab). *Id.* ¶ 213.

Professor Roe ultimately informed Doe that he would need to leave the laboratory because the graduate students could not stand being in the presence of a Jew. *Id.* ¶¶ 227, 240-242. From there, the harassment escalated. One of Doe's harassers from the lab has attempted to hack into several of Doe's email accounts. *Id.* ¶ 262. On March 15, 2025, Doe received a notification that the recovery email on one of his personal accounts had been changed to what appears to be the graduate student's email address. The IP address of the hacker is traceable to where the graduate student resides. The password on the hacked account was also changed, preventing Doe, to this day, from being able to access the account to reset his login credentials. The attacks are ongoing.

Although Doe had reported the anti-Semitic harassment and discrimination to his department in a series of in-person meetings, once Doe reported the discrimination and harassment in writing, Professor Roe immediately and publicly terminated Doe's position and removed him from group distribution lists "due to escalating

6

circumstances." *Id.* ¶¶ 251-254. Contrary to standard practices, Professor Roe also removed Doe from his group's multiple websites, as well as the department and laboratory webpages, erasing any trace of Doe despite his substantial contributions to the lab, effectively erasing his affiliation and contributions. *Id.* ¶¶ 254-255.

Professor Roe has also smeared and defamed Doe with vile rhetoric within their scientific community, including saying false and terrible things about him to professors at other universities at which he was applying for a tenured professorship. *Id.* ¶¶ 257-258, 263-266.

**John Doe is Facing Numerous Threats and Dangers at MIT**

The dangers also involve potential physical harm to Doe and his partner. During this same time period, Doe was assaulted by protesters in a parking garage and shoved against a wall. Doe Decl. ¶ 11. On another occasion, an anti-Israel flyer was placed on Doe's windshield (and there were no such flyers on any other cars in the parking lot). *Id.* Professor Roe knows where he lives and the graduate students know where he parks his car. *Id.* ¶ 9. They also know Doe's route from his parking lot to his new working space. Doe reasonably fears what they will do—or help others do—if his participation in this lawsuit is made public (especially given the recent distribution of "terror maps" at MIT). Doe is also afraid of what other students at MIT who have been engaged in violent protest activities would do to him if his identity was revealed. Doe is aware that another plaintiff, William Sussman, was aggressively targeted and harassed by an MIT professor simply for raising a concern about anti-Semitic rhetoric. Doe is aware that MIT failed to stop the abuse. The professor's targeting of Sussman

7

led to widespread harassment and threats that were so severe that Sussman ultimately left MIT without completing his PhD program. Compl. ¶ 255.

Harassment, discrimination, and retaliation have had a profound impact on Doe's physical and emotional well-being. His mental health deteriorated, and he has experienced severe psychological harm, including depression, anxiety, mental fatigue, a sense of alienation and deep humiliation. Doe Decl. ¶ 18.

Based on all of these events, Doe reasonably fears for the physical and psychological safety of himself and his partner. Doe also reasonably fears that being publicly identified will lead to further damage to his reputation and career. Doe has already lost one position at MIT due to anti-Semitism and the reporting of harassment. Doe is therefore reasonably concerned that if his identity was made public, he could be subjected to further retaliation and the loss of his current position. Doe Decl. ¶ 12, 19.

**John Doe's Fears are Supported by Empirical Data**

Doe's fears are consistent with recent surveys of the experiences of Jewish students and faculty on U.S. campuses. If Doe is not allowed to proceed as a John Doe, it could deter other similarly situated individuals from coming forward and asserting their claims of discrimination, harassment, and retaliation:

- In a survey by the Anti-Defamation League (ADL) of 209 Jewish faculty members at U.S. college and universities:[3]
    - 37.8% reported feeling a need to hide their Jewish and/or Zionist identity from others on campus.
    - 43.5% reported feeling unwelcome in faculty committees or at faculty events because they are Jewish or perceived as Zionist.
    - 13.4% said they have been subjected to online smear campaigns associated with their campus that identify them by name – i.e., targeted

---

[3] *See, Faculty Under Fire: Antisemitism and Anti-Israel Bias in Higher Education,* ADL (Sept. 10, 2025), https://www.adl.org/resources/report/faculty-under-fire-antisemitism-and-anti-israel-bias-higher-education.

- digital harassment often accompanied by doxxing, which "creates lasting reputational damage and can effectively hinder or end academic careers."
  - 21.5% reported experiencing differential treatment in professional evaluations, promotions, or job assignments because they are Jewish or perceived as Zionist.
  - 13.4% reported experiencing bias in peer review or research funding decisions on campus.
  - 14.8% reported encountering reluctance or refusal from campus colleagues to collaborate on academic projects.
  - 73.2% of respondents identified faculty, administrators or staff as perpetrators of anti-Jewish activities or statements on campus.
  - Open-ended responses revealed faculty members who have been "effectively forced out of academia or [are] abandoning research areas they are passionate about due to a fear of being targeted and thus harmed professionally."
  - "As a result of sustained hostility, harassment, ostracism, gaslighting, and the absence of institutional support, many of the surveyed faculty described worsening mental and physical health, increased self-censorship, fear for personal safety, and perceived risks and long-term costs for their professional careers."

- ADL recorded an 84% increase in anti-Semitic incidents on college campuses from 2023 to 2024.[4]

- Hillel International recorded a ten-fold rise in anti-Semitic incidents on college campuses in 2023-2024 compared with 2022-2023.[5]

## LEGAL STANDARD

Although there is a presumption against litigants proceeding anonymously, district courts have broad discretion to determine whether anonymity is warranted under the circumstances. *See Doe v. MIT*, 46 F.4th 61, 70 (1st Cir. 2022).

"[A]nonymity ordinarily will be warranted" if the facts fall within any one of "four general categories": (1) the plaintiff "reasonably fears that coming out of shadows will cause him unusually severe harm (either physical or psychological)"; (2)

---

[4] *See* ADL, Audit of Antisemitic Incidents 2024 (Apr. 22, 2025), https://www.adl.org/resources/report/audit-antisemitic-incidents-2024.

[5] *See* Hillel International, Antisemitic Incidents on Campus at Record High in Past School Year (July 17, 2025), https://www.hillel.org/antisemitic-incidents-on-campus-at-record-high-in-past-school-year/.

9

identifying the plaintiff "would harm innocent non-parties"; (3) "anonymity is necessary to forestall chilling effect on future litigants who may be similarly situated"; and (4) the lawsuit is "bound up with a prior proceeding made confidential by law." *Id.* at 70-72 (internal quotations omitted). Under this framework, a district court deciding whether to grant a request for anonymity will first "determine[] whether the case before it fits into one of the four categories," and "[i]f so, 'party anonymity ordinarily will be warranted.'" *Doe v. Town of Lisbon*, 78 F.4th 38, 46 (1st Cir. 2023) (quoting *MIT*, 46 F.4th at 71).

## ARGUMENT

### I. THE MOTION FOR ANONYMITY FALLS SQUARELY WITHIN ALL FOUR OF THE "GENERAL CATEGORIES" IDENTIFIED BY THE FIRST CIRCUIT FOR PROTECTION

John Doe's request to proceed anonymously falls directly under all four of the First Circuit's generalized categories for anonymity: reasonable fear of retaliation, the potential harm to non-parties, deterrent effect on similarly situated individuals, and connection to a prior proceeding made confidential by law. *See MIT*, 46 F.4th at 71-72.

#### A. Reasonable Fear of Retaliation

John Doe reasonably fears severe harm both physically and psychologically. He has already experienced numerous documented incidents of harassment, threats and retaliation. Compl. ¶¶ 198-267. In addition to the vile and violent rhetoric pervading the MIT campus, Doe has been subjected to ongoing harassment, malicious rumors, physical assault, hacking of his email, discriminatory flyers on his car, and the publication of defamatory falsehoods about him to third parties in the scientific community, including potential employers. *Id.* These events establish a need for

10

anonymity that goes far beyond "the reasonable fear" that John Doe is required to prove. Plaintiff Doe here has established that retaliation against him is *already taking place*.

The experience of plaintiff William Sussman is also instructive. As a result of objecting to anti-Semitism, Sussman was harassed by a professor so publicly and so relentlessly that he could no longer remain on campus, and consequently left MIT before completing his PhD. Compl. ¶¶ 112-145, 151-159. Sussman's experience demonstrates what can happen when the broader MIT community knows the identity of the Jew who has reported anti-Semitism. These reasonable fears are further amplified by the widespread distribution of "terror maps" calling for violence against Jews and Israelis and the recent violent threats directed at the Stata Center *on MIT's campus*.

The potential harm to John Doe if he is named is at least as severe as that faced by other plaintiffs who have been allowed to proceed under a pseudonym. For example, this Court has held that the potential for "psychological harm" can weigh in favor of anonymity, *Trs. of Bos. Coll.*, 2024 WL 816507, at *3, and other district courts have rendered similar decisions for "allegations concerning sexual relationships," "homosexuality," and "religious beliefs." *Doe v. Butler Univ.*, 22-CV-01828, 2022 WL 18540513, at *3 (Nov. 18, 2022) (collecting cases). Doe has been experience sleeping disorders and eating disorders and he reasonably fears it will get worse and progress towards serious health issues.

The fact that John Doe's request clearly meets this standard is enough by itself for this Court to grant anonymity.

11

### B.     Potential Harm to Non-Parties

The threats described in this memorandum have been directed not only at Doe, but also at his partner. Compl. ¶¶ 199, 201, 205-206, 208. The harassers in Doe's lab were fixated on the relationship between Doe and his partner and talked of a covert plan to break them up to prevent more Jewish babies. *Id.* Roe knows where Doe and his partner live. The other harassers know where he parks his car and his daily walking route from the parking lot to MITDoe Decl. ¶ 9. Doe reasonably fears what they will do—or help others do—to his partner if his participation in this lawsuit is made public. *Id.* And there is no reason to believe that the wider anti-Jewish and anti-Israeli mob at MIT will spare Doe's partner if Doe's identity is revealed. Roe and the graduate students also know Doe's partner's identity and where she works.

Anonymity is therefore appropriate not just to protect John Doe, but also his partner who is not a party.

### C.     Deter Similarly Situated Students

The deterrence category, under which "anonymity is necessary to forestall a chilling effect on future litigants who may be similarly situated," also squarely applies here. *MIT*, 46 F.4th at 71. In evaluating whether a case falls within this category, the First Circuit has adopted the Third Circuit's emphasis on the "need to ascertain whether other similarly situated litigants [will] be deterred from litigating claims that the public would like to have litigated." *Id.* (quoting *Doe v. Megless*, 654 F.3d 404, 410 (3rd Cir. 2011)). If John Doe's identity is made public, there is no question that other students who have experienced similar incidents of harassment, discrimination, and retaliation at MIT will be deterred from seeking judicial relief. As detailed above,

12

recent studies have demonstrated both the prevalence of anti-Semitic events on campuses across the country and the impact it is having on Jewish individuals, who feal they need to conceal their identity, fear retaliation in the event they complain about what they have witnessed, fear for personal safety, and who are experiencing worsening mental and physical health. *Supra* 8-9.

"The First Circuit specifically cites, as typical examples," cases where "the injury litigated against would be incurred as a result of the disclosure of the [party's] identity." *Trs. of Bos. Univ.*, 2024 WL 4700161, at *4 (quoting *MIT*, 46 F.4th at 71). Here, the deterrent effect would be in no small part due to the further threats John Doe would face. In this sense, "the injury litigated against would be incurred as a result of the disclosure of [John Doe's] identity"—John Doe filed this lawsuit to hold MIT accountable for allowing members of the MIT community to harass and retaliate against him for being Jewish, and deterring other students from litigating additional incidents of harassment by exposing John Doe's identity would only allow this hostile environment to persist. *Trs. of Bos. Univ.*, 2024 WL 4700161, at *4 (quoting *MIT*, 46 F.4th at 71).

Moreover, this Court has recognized that, when individuals are "challenging the fairness of an institutional process, and the institution has been identified," "the public's interest in the identity of [the] plaintiff" is of "minimal value." *Trs. of Bos. Univ.*, 2024 WL 4700161, at *4 (quoting *Doe v. Purdue Univ.*, 321 F.R.D. 339, 343 (N.D. Ind. 2017)). Instead, the public's interest is in the fairness of the institutional process itself, which is directly implicated by John Doe's suit.

13

**D.     Bound Up With a Prior Proceeding Made Confidential by Law**

Doe has reported discrimination, harassment, and retaliation within his academic department at MIT numerous times to the Associate Head of the Department and its HR Officer. Compl. ¶¶ 232-233, 236-239, 248-252. He requested that they file a complaint on his behalf to MIT's designated office that handles complaints of discrimination. *Id.* ¶ 233. Doe's claims in this lawsuit are based on MIT's "deliberate indifference" and improper handling of his complaints. His complaints were ignored, he was misled about the process, and ultimately MIT took no action to stop the harassment, discrimination and retaliation. *Id.* ¶¶ 231-245, 248-252, 267.

In *MIT*, 46 F.4th at 75-76, the First Circuit found that the district court erred in refusing to consider the fact that the suit involved a challenge to a prior confidential Title IX proceeding. *Id.* ("It makes little sense to lift the veil of pseudonymity that—for good reason—would otherwise cover these proceedings simply because the university erred and left the accused with no redress other than a resort to federal litigation.") (quotations and citation omitted).

Similar allegations were enough in *Doe v. Trustees of Boston University*, 2024 WL 4700161 (D. Ma. Nov. 6, 2024), to warrant allowing the plaintiff to proceed using a pseudonym. *Id.* at *4 ("At the core of the complaint is a Title IX proceeding that Doe contends was conducted improperly—both the proceeding itself and the decisions made based upon its findings are the subject of the complaint."). The court held that "[i]t would make little sense to require that, in a suit alleging the Title IX process was conducted unfairly and in a discriminatory manner, yet another fundamental tenet of the process should be betrayed by piercing its confidentiality." *Id.*

Here, Doe should not have to make his identity public to obtain redress for the improper handling of what was supposed to be a confidential complaint process. This alone warrants granting Doe anonymity.

## II. MIT WILL NOT BE PREJUDICED BY ANONYMITY

In the interest of fairness, courts often consider whether anonymity will prejudice the defendant when deciding whether to grant a plaintiff's request. A crucial component of this inquiry is whether the defendant will be prejudiced by its lack of knowledge of the plaintiff's identity, which could create "difficulties in discovery" and prevent defendants from advancing meritorious defenses. *See, e.g.*, *Butler Univ.*, 2022 WL 18540513, at *3.

Here, MIT cannot plausibly claim that it will be prejudiced due to any of these factors. It knows John Doe's identity and can freely "prosecute any claims that have legal merit." *Id.* Further, Doe is not seeking to make accusations against individuals while hiding behind the veil of anonymity; he proposes to use pseudonyms for Professor Richard Roe and the students in his lab who harassed him. In short, the minimal-to-non-existent potential for prejudice resulting from John Doe's anonymity weighs heavily in favor of granting Plaintiff's request.

## III. THE TOTALITY OF CIRCUMSTANCES WARRANT ANONYMITY

Preventing disclosure of Plaintiff's personal information is proper "after weighing competing interests," such as when public access would interfere with the party's "privacy rights." *United States v. Kravetz*, 706 F.3d 47, 62 (1st Cir. 2013) (citation omitted). As demonstrated here, protecting a plaintiff's identity "is particularly important" in cases where his "cause is unpopular; once the participants

15

lose his anonymity, intimidation and suppression may follow." *Sexual Minorities of Uganda v. Lively*, 2015 WL 4750931, at *4 (D. Mass. Aug. 10, 2015) (citation omitted). Unfortunately, there can be no question that combating anti-Semitism is an unpopular cause on MIT's campus and that intimidation will follow if Doe's identity is revealed.

Finally, allowing Doe to proceed anonymously would be consistent with this Court's practice of redacting personal information in similar situations. *See e.g.*, *United States v. Swartz*, 945 F. Supp. 2d 216, 221 (D. Mass. 2013) (denying a motion to modify a protective order to disclose identifying information due to documented incidents of harassment and retaliation against individuals connected to the investigation); *United States v. Regeneron Pharms., Inc.*, 2023 WL 3061505, at *5 (D. Mass. Apr. 21, 2023) (unsealing a deposition transcript while requiring the redaction of the witness's name and other personally identifiable information due to concerns about retaliation and harassment"); *see also Doe v. Blue Cross & Blue Shield of R.I.*, 794 F. Supp. 72, 75 (D.R.I. 1992) (allowing a transgender plaintiff to proceed anonymously due to minimal evidence that the public interest in disclosure outweighs the plaintiff's security concerns).

## CONCLUSION

For the reasons above, this Court should allow Plaintiff John Doe to proceed under a pseudonym in this lawsuit.

Dated:  September 17, 2025　　　　　Respectfully submitted,

**THE LOUIS D. BRANDEIS CENTER FOR HUMAN RIGHTS UNDER LAW**


By:＿＿＿Philip Y. Brown＿＿＿

**THE LOUIS D. BRANDEIS CENTER FOR HUMAN RIGHTS UNDER LAW**
Richard A. Rosen*
Paul M. Eckles*
Rebecca Harris*
1330 Ave of the Americas, 23rd floor
New York, NY 10019
Telephone: (202) 559-9296
rrosen@brandeiscenter.com
peckles@brandeiscenter.com
rharris@brandeiscenter.com

**BROWN COUNSEL, LLC**
Philip Y. Brown (BBO #552366)
Amelia R. Gray (BBO #675632)
One Marina Park Drive, 1410
Boston, MA 02210
Telephone: (617) 683-1500
pbrown@browncounsel.com
agray@browncounsel.com

*Attorneys for Plaintiffs
William Sussman, Lior Alon, John Doe &
The Louis D Brandeis Center Coalition to
Combat Anti-Semitism*


**White & Case LLP**
Jonathan D. Polkes*
1221 Avenue of the Americas
New York, New York 10020-1095

Telephone: (212) 819-8200
Facsimile: (212) 354-8113
jonathan.polkes@whitecase.com

Rachel Rodman*
701 Thirteenth Street, NW
Washington, DC 20005-3807
Telephone: (202) 626-3600
Facsimile: (202) 639-9355
rachel.rodman@whitecase.com

*Attorneys for Plaintiff
The Louis D Brandeis Center Coalition to
Combat Anti-Semitism*

*Pro hac vice application forthcoming*

## **Certificate of Service**

      I do hereby certify that on September 17, 2025, this document filed through the ECF system will be served electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be served by email and by first class mail postage prepaid, to those indicated as non-registered participants (to the extent there are any) on September 17, 2025.

      */s/Philip Y. Brown*

      Philip Y. Brown