UUNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

William Sussman, Lior Alon, John Doe, and The Louis D. Brandeis Center Coalition to Combat Anti-Semitism,

        Plaintiffs,

v.

Massachusetts Institute of Technology and Michel DeGraff,

        Defendants.

Case No. 25-CV-11826-RGS

### **DEFENDANT MICHEL DEGRAFF'S REPLY MEMORANDUM OF LAW**

Defendant Michel DeGraff, by his counsel Mark Kleiman and Jonathan Wallace, submits this Memorandum of Law in Reply to Plaintiffs' Opposition and in further Support of his Motion to Dismiss the Complaint.

Plaintiffs' attempt to contradict Defendant's arguments without really rebutting them suggests that this is the most they can manage without frankly conceding they have no defensible position.

**Point One**

***STAND WITH US* REQUIRES DISMISSAL OF THIS ACTION**

Plaintiffs, in passing, attempt to distinguish the First Circuit's recent decision in <u>StandWithUs Ctr. for Legal Just. v Massachusetts Inst. of Tech.</u>, 158 F.4th 1 (1st Cir 2025), rather incomprehensibly, on the flimsy ground that the instant case involves "targeted harassment for being Jewish and/or Israeli" while <u>StandWithUs</u> asked "whether Title VI required MIT to try to put an end to the protestors' speech . . . merely because those students opposed Israel and favored the Palestinian cause." <u>Id</u>. at 21-22. Plaintiffs dissimulate: "It thus viewed the matter as involving viewpoint discrimination and implicating precedent addressing prior restraints". (Dkt. 069, p. 37).

1

This is mere Pythonesque contradiction ("No it isn't!"). At its best it asserts a distinction without a difference.[1] StandWithUs ruled on the same speech, in the same controversy, at the same university:

> "[M]ost of the conduct about which plaintiffs complain is speech protected by the First Amendment, and we do not construe Title VI as requiring a university to quash protected speech. Furthermore, by gathering together in groups on campus, disrupting campus tranquility, and impeding travel for many students, the protestors did not render their speech antisemitic, much less unprotected. Finally, to the extent that plaintiffs allege isolated incidents that are plausibly antisemitic, the complaint's allegations are not sufficiently severe, pervasive, and offensive to constitute actionable harassment under Title VI".

Id., at 18-19.

StandWithUs is therefore dispositive of the present case. So the present case must be dismissed.

**Point Two**

**THE FIRST AMENDMENT REQUIRES DISMISSAL OF THE TORT CLAIMS**

Plaintiffs are wrong to deny that Professor DeGraff never argued that MIT's suppression of his speech violated the First Amendment. (Dkt. 069, p. 35) MIT is admittedly a private university not subject to the First Amendment. Professor DeGraff never alleged otherwise. However, this Court is being asked to find that certain First Amendment-protected expressions of opinion or statements of fact made by Professor DeGraff are forbidden by the over-inclusive sweep of the IHRA standards because they were defamatory, harassing or intended to inflict distress. If it did so, not only would this Court err as a matter of law; it would, as a state actor, infringe Professor DeGraff's First Amendment rights. At page 18 of his brief in support of the Motion to Dismiss, Professor DeGraff cited *New York Times Co. v. Sullivan,* 376 U.S. 254, 265 (1964) ("It matters not that that law has been applied in a civil action and that it is common law only, though supplemented by statute. . . The test is not the form in which state power has been

---

[1] http://montypython.50webs.com/scripts/Series_3/27.htm

applied but, whatever the form, whether such power has in fact been exercised.") and " <u>Gartenberg v Cooper Union for the Advancement of Science & Art</u>, 765 F Supp 3d 245, 260-261 (SDNY 2025) ("Although the primary method of enforcement of the harassment prohibition is through civil actions between private parties, imposition of liability by the courts under federal and state statutes easily falls within the definition of 'state action.'")

      Plaintiffs' wishful denial of the firmly established principle that government enforcement of laws that restrict or punish speech makes the First Amendment applicable is not to be credited.  Cases cited by Plaintiffs are not to the contrary. <u>Healy v James</u>, 408 US 169, 184 (1972) actually imposes heightened scrutiny on a university's suppression of speech and expressive activity, holding that even while pursuing the "legitimate interest in preventing disruption",  "the effect of the [public] College's denial of recognition [to a student SDS chapter] was a form of prior restraint... a heavy burden rests on the college to demonstrate the appropriateness of that action".

      Plaintiffs have bewilderingly invoked a case that largely granted summary judgement to labor protesters and picketers, holding that social media postings, leafleting, sending mailings, holding banners, entering workplaces to urge respect for a boycott, and arriving at a business with a nine-foot tall inflatable rat are all protected speech.  <u>Ameristar Casino E. Chicago, LLC v Unite Here Local 1</u>, 2018 US Dist LEXIS 144171, at *11 (ND Ill Aug. 24, 2018, No. 16 CV 5379) involved the National Labor Relations' Act ban on secondary picketing. The Court acknowledged that "coercive conduct should not be interpreted to include speech protected by the First Amendment" and that "passive social media posts are not coercive", <u>Id.</u>, at *19.  The court distinguished conduct which could be regulated, such as trespass or placing a phone call every ten minutes from "mere speech", which was not to be regulated. <u>Id.</u> at **11-12.  (The sole basis for partially denying the  labor protesters' motion for summary judgement was one plaintiff's sworn testimony that protesters had physically blocked the entrance to her restaurant. <u>Id.</u> at **30-31.) By contrast, the assertions Plaintiffs make against Professor DeGraff involve pure speech.

      Plaintiffs cite <u>Gartenberg</u>, supra, which held that "it will usually be difficult—if not impossible—to show that a college or university acted in a clearly unreasonable manner under Title VI where its acts

3

of alleged deliberate indifference consist of its refusal to punish political speech directed at the college community through reasonable means". Id. at 267. Again, all that Plaintiffs find to assert about the Professor is that he mentioned them on social media, in email and in his seminar. Also, in Gartenberg, the plaintiffs did not sue any individual students or faculty, and the Court therefore did not find, as Plaintiffs here ask the Court to do, that a cause of action was stated for individual liability on any account, merely for a failure to intervene by the University.

In fact, even a finding that a private university had a duty under Title VI to regulate First Amendment-protected speech by members of its community, does not translate into, or support, tort liability on the part of those individuals for their speech. The Gartenberg court dismissed all the Plaintiffs' tort claims against the college. It also examined the very complex, nuanced relationship between the First Amendment and Title VI, entitling a point in its analysis "Title VI Must Be Applied Consistent with First Amendment Principles, Even When the Defendant is a Private Institution", Id., at 260. "A statute that burdens protected speech must comport with the First Amendment regardless of whether it does so directly, such as by prohibiting certain speech outright, or indirectly, such as by requiring a court adjudicating a 'civil lawsuit between private parties' to apply a rule of law that has the effect of 'impos[ing] invalid restrictions on [the defendant's] constitutional freedom[] of speech'", at 260, (citing New York Times v. Sullivan, 376 U.S. at 365 (1964).

In citing Doe v. Hopkinton Pub. Sch., 19 F.4th 493 (1st Cir. 2021), Plaintiffs ask this Court to find that the enforcement of anti-bullying rules against members of a high school hockey team by a public school somehow supports tort liability of a professor to an adult student acting as a limited-purpose public figure. (The bullying included photos of the child-victim's parents with disparaging comments about the parents' appearance, and similarly degrading comments about the victim's appearance and anatomy. Id. at 501. In Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 580 (5th Cir. 2005), the Fifth Circuit considered a gag order against a litigant who "called [the adverse party] dozens of times a day, including seventy-one times on one day in May 2003... includ[ing] the screaming of obscenities", and even then concluded that the order was an unconstitutional prior restraint, because it was overbroad. Sanchez v

4

Jenkins Twp., 2025 US Dist LEXIS 76854, at *11 (MD Pa Apr. 23, 2025, No. 3:23-CV-01321) involved neighbors in a parking dispute, where the plaintiff's harassing activities involved repeatedly "yelling at the family, [and] cursing at the family and Malloy's adolescent son" in a way that was "agitated and abusive". None of these cases remotely supports the assertion that Plaintiffs have plausibly pled causes of action against Professor DeGraff under Massachusetts tort law.

  Plaintiffs' fanciful insistence that they have plausibly alleged anti-Semitic animus proceeds in complete derogation of the First Circuit's conclusion that anti-Zionism cannot be equated with anti-Semitism.  (StandWithUs 158 F.4th at 22 (2025) and their insistence to the contrary cannot be credited. Their argument also disregards the fact, discussed above and well-analyzed in Gartenberg, *supra,* that a Title VI analysis of whether, for example, a private university may intervene to prevent a student from chanting "From the river to the sea, Palestine shall be free" on campus, is wholly different from the analysis of whether "From the river to the sea" is First Amendment-protected speech (as it clearly is, under *Snyder v. Phelps).* The claim that speakers may be held liable for damages under tort theories for "a discriminatory animus against Jews and/or Israelis in violation of MIT's own policy" is *not* "all that is required at the pleading stage" where tort claims are concerned. Plaintiffs disingenuously attempt to turn the question of whether MIT can legally proscribe speech into the entirely different question of whether the speaker may be civilly liable for damages.  These are entirely different questions.  Cruz v Raytheon Co., 435 F Supp 3d 350, 353 (D Mass 2020), by

  The string-cited cases all determine whether a claim of discrimination was plausibly stated against an employer or entity subject to antidiscrimination laws. They are completely inapposite to the proposition that "Plaintiffs have plausibly asserted that Professor DeGraff's acts were motivated by a discriminatory animus against Jews and/or Israelis in violation of MIT's own policy, which is all that is required for the tort claims at the pleading stage".  Plaintiffs of course do not include Professor DeGraff in their only federal claim, under Title VI, and could not, because it does not create personal liability for individuals asserted to have committed discriminatory acts: "Since this private right of action extends only to claims against the educational institution itself... the plaintiffs'.... claim perforce fails as to all the

5

individual defendants"*,* Frazier v Fairhaven Sch. Comm*.*, 276 F3d 52, 65 (1st Cir 2002) (Title IX); Tupper v NYU Langone Hosp. Long Is.*,* 2025 US Dist LEXIS 112270, at *12 (EDNY June 12, 2025, No. 24-CV-6306(GRB)(SIL)) ("It is well-established that Title VI claims cannot be asserted against an individual defendant because the individual is not the recipient of federal funds.").

Plaintiffs ask this Court to treat Professor DeGraff's postings on matters of public concern, in respected papers such as a *Le Monde Diplomatique* (First Amended Complaint ¶ 100) as indistinguishable from a neo-Nazi's hate speech threatening someone with a "storm" and publishing her address, and that of her 12 year old son and her husband. (Gersh v Anglin, 353 F Supp 3d 958, 962 (D Mont 2018) The assertion is literally that Professor DeGraff threatened someone with a mob by posting First Amendment-protected political opinions that made them unhappy.

This Court should note that Plaintiffs in their opposition do not deny that Plaintiff Sussman is a public figure. Their challenge of judicial notice as to Professor DeGraff's Exhibits C,D and E therefore becomes moot, because those were proposed to the Court to establish Sussman's public figure status (Document #49, Request for Judicial Notice). On page 19, fn. 3, of their Memorandum in Opposition, Plaintiffs assert that these Exhibits be disregarded because they are not "referenced in the Complaint". However, at best, being referenced in the Complaint is just one path to judicial notice, Judicial notice clearly may be taken of matters not referenced in the Complaint if "they are generally known within the trial court's territorial jurisdiction; or**...** can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned", USCS Fed Rules Evid R 201(b). Exhibits C, D and E, introduced to demonstrate Plaintiff Sussman's status as a public figure, are derived from "sources whose accuracy cannot reasonably be questioned", given they have not in fact been questioned by Plaintiffs in their response.

Plaintiffs also dispute that Plaintiff Alon is a limited purpose public figure (Memorandum pp. 49-50). This does not raise a disputed fact issue, as the determination of public figure status is a matter of law, McKee v Cosby*,* 874 F3d 54, 62 (1st Cir 2017) cert. den. 586 U.S. 1172 (2019).

In the *Fox News* reports linked in Professor DeGraff's Memorandum in Support (p. 22), Plaintiff Alon is clearly editorializing. The first piece linked is entitled "MIT researcher offers blunt opinion on school encampment"; in the second, he has been invited to opine because of a public letter he wrote MIT.

Plaintiffs cite Alharbi v. TheBlaze, Inc., 199 F. Supp. 3d 334, 355–57 (D. Mass. 2016) for the proposition that granting press interviews does not necessarily create public figure status, but the facts bear no resemblance. Plaintiff Al Harbi was injured in the Boston Marathon bombing, and was falsely accused by commentator Glenn Beck of being "the money man". Al Harbi granted a few interviews to the Arab press to clear his name back home. Plaintiff Alon went out of his way to seek appearances on Fox News to promote his viewpoints.  Plaintiff Alon is therefore a classic limited purpose public figure. Both Plaintiffs were therefore required to allege actual malice in their Complaint, and failed to do so except in the most conclusory fashion.

The First Amendment requires dismissal of all claims against Professor DeGraff.

## CONCLUSION

Since the very inception of Title VI, members of campus communities have sued their universities for discrimination without naming other community members as individual defendants. The defects in Plaintiff's Complaint, and the general weakness of their opposition to Professor DeGraff's motion, call into question why the Plaintiffs chose to do so here. The Complaint should be dismissed in its entirety as against Professor DeGraff.

Dated: December 22, 2025                                         Respectfully submitted,

*/s/ Jonathan Wallace*
*(pro hac vice)*
Jonathan Wallace (NY SBN 1733537)
P.O. Box 728
Amagansett, NY 11930
(917) 359-6234
Jonathan.wallace80@gmail.com

<div style="margin-left:50%">

*/s/ Mark Kleiman*
Mark Allen Kleiman (CAL SBN 115919)
(*pro hac vice*)
mark@krlaw.us
KLEIMAN RAJARAM
12121 Wilshire Boulevard Suite 810
Los Angeles, California 90025
(310) 392-5455

Mahsa KhanbabaI, (BBO #639803)
mahsa@mk-immigration.com
KHANBABAI IMMIGRATION LAW
115 Main street, Suite 1B
North Easton, MA 02356
508-297-2065

Attorneys for Defendant Michel DeGraff

</div>

## CERTIFICATE OF SERVICE

I, Mark Kleiman, hereby certify that a true copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on December 22, 2025.

<div style="text-align: right;">

*/s/ Mark Kleiman*
Mark Kleiman

</div>