## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

William Sussman, et al.,

     Plaintiffs,

v.

Massachusetts Institute of Technology and
Michel DeGraff,

     Defendants.

Case No. 25-CV-11826-RGS

**Leave to File Excess Pages
Granted on October 21, 2025**

## DEFENDANT MASSACHUSETTS INSTITUTE OF TECHNOLOGY'S REPLY
## IN SUPPORT OF PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................... ii

INTRODUCTION................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I.      This Court Should Reject Plaintiffs' Efforts To Diminish The Pleading
        Standard.................................................................................................................. 2

II.     The Title VI Claims At Issue Should Be Dismissed......................................... 3

        A.      Recent And Binding Authority Reinforces MIT's Arguments For
                Dismissal................................................................................................. 3

        B.      Plaintiffs' Efforts To Resist That Precedent Are Unavailing. ............................. 6

III.    Alon's Title VII Hostile-Environment Claim Should Be Dismissed................................ 9

IV.     Alon And Sussman Cannot Salvage Their Retaliation Claims. ...................................... 10

V.      The State Law Claims Asserted By Alon And Sussman Should Be Dismissed.............. 13

VI.     The Coalition's Claims Should Be Dismissed For Lack of Standing............................. 14

CONCLUSION.................................................................................................................. 15

# TABLE OF AUTHORITIES

**CASES**

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007).................................................................. 2

*Better Way Ford, LLC v. Ford Motor Co.*, 142 F.4th 67 (1st Cir. 2025)..................................... 3

*Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006)............................ 11

*Colburn v. Parker Hannifin/Nichols Portland Division*, 429 F.3d 325 (1st Cir. 2005).................................................................................................................................. 12

*Doherty v. Emerson College*, No. 1:14-cv-13281, 2017 WL 4364406 (D. Mass. Sept. 29, 2017) ................................................................................................................. 14

*Feminist Majority Foundation v. Hurley*, 911 F.3d 674 (4th Cir. 2018)..................................... 9

*Fire & Police Pension Ass'n of Colorado v. Abiomed*, 778 F.3d 228 (1st Cir. 2015)................................................................................................................................... 15

*Fiss v. California College of the Arts*, No. 24-cv-03415, 2025 WL 91181 (N.D. Cal. Jan. 14, 2025).................................................................................................................. 10

*Frankel v. Regents of University of California*, 744 F. Supp. 3d 1015 (C.D. Cal. 2024).................................................................................................................................... 7

*Garrett v. CUNY*, No. 24-cv-9710, 2025 WL 3096550 (S.D.N.Y. Oct. 10, 2025)...................... 9

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993).................................................................... 9

*Kestenbaum v. President & Fellows of Harvard College*, 743 F. Supp. 3d 297 (D. Mass. Aug. 6, 2024)....................................................................................................... 6

*Landa v. University of Maryland College Park*, No. 22-0016, 2022 WL 2905094 (D. Md. July 22, 2022)...................................................................................................... 9

*Louis D. Brandeis Center for Human Rights Under the Law v. President & Fellows of Harvard College*, No. CV 24-11354, 2024 WL 4681802 (D. Mass. Nov. 5, 2024).................................................................................................................................... 6

*Mouradian v. General Electric Co.*, 23 Mass. App. Ct. 538 (1987).......................................... 13

*Parent/Professional Advocacy League v. City of Springfield*, 934 F.3d 13 (1st Cir. 2019).................................................................................................................................. 15

*Ponte v. Steelcase Inc.*, 741 F.3d 310 (1st Cir. 2014).................................................................. 9

*Posada v. ACP Facility Services, Inc.*, 389 F. Supp. 3d 149 (D. Mass. 2019).......................... 12

*Ruffino v. State St. Bank & Trust Co.*, 908 F. Supp. 1019 (D. Mass. 1995)................................ 13

*Russell v. Salve Regina College*, 649 F. Supp. 391 (D.R.I. 1986)................................................. 14

*Sandstrom v. ChemLawn Corp.*, 904 F.2d 83 (1st Cir. 1990)..................................................... 13

*Segev v. President & Fellows of Harvard College*, No. 1:25-cv-12020, Electronic
    Order (D. Mass. Dec. 4, 2025), ECF No. 35...................................................... 1, 6

*Setterlund v. Potter*, 2009 WL 3298095 (D. Mass. Aug. 7, 2009) ............................................ 12

*Sheldon v. F.W. Webb Co.*, No. 4:24-CV-13157, 2025 WL 2778018 (D. Mass. Sept.
    26, 2025)........................................................................................................ 13

*Shyr v. Trustees of Boston University*, No. CV 16-11124, 2017 WL 1014999 (D.
    Mass. Mar. 13, 2017) ...................................................................................... 14

*Spagnuolo v. Holzberg*, 98 Mass. App. Ct. 661 (2020)............................................................ 13

*Stand With Us Center for Legal Justice v. MIT*, 158 F.4th 1 (1st Cir.
    2025).................................................................. 1, 2, 3, 4, 5, 7, 8, 9, 10, 15

*Taylor v. Swartwout*, 445 F. Supp. 2d 98 (D. Mass. 2006)....................................................... 14

*Vance v. Ball State University*, 570 U.S. 421 (2013) ............................................................... 12

*Wofse v. Horn*, 523 F. Supp. 3d 122 (D. Mass. 2021).............................................................. 14

## INTRODUCTION

The claims at issue in MIT's Motion to Dismiss fail under a straightforward application of established precedent, which the First Circuit recently confirmed in a binding and unanimous decision affirming that MIT was not deliberately indifferent to actionable antisemitic harassment. *Stand With Us Center for Legal Justice v. MIT* ("*SWU*"), 158 F.4th 1 (1st Cir. 2025). Just weeks ago, this Court applied *SWU* to dismiss similar claims against another university. Electronic Order, *Segev v. Pres. & Fellows of Harvard Coll.*, No. 1:25-cv-12020 (D. Mass. Dec. 4, 2025), ECF No. 35 ("*Segev* Order"). This case merits the same result: save a handful of claims asserted by "John Doe," the claims in Plaintiff's Amended Complaint ("AC") should be dismissed.

Plaintiffs spend page after page detailing and defending Doe's claims, in an apparent effort to distract from the fundamental flaws in the theories actually at issue in MIT's Motion. This Motion is not about Doe's claims, which MIT vigorously disputes and will address through further proceedings, nor does the existence of those claims excuse Plaintiffs from plausibly alleging each element of the claims that are subject to MIT's Motion. Plaintiffs downplay the significance of *SWU*, arguing this Court should apply decisions predating the First Circuit's latest ruling and involving readily distinguishable factual allegations. But the *SWU* precedent undeniably applies here, and the allegations new to this pleading only underscore the continued reasonableness of MIT's response and the persistent failure by challengers to identify actionable antisemitic harassment. Plaintiffs also cannot evade the pleading requirements of federal antidiscrimination law by presenting their same theories as state law claims, nor can they litigate via associational standing when their own opposition underscores the highly varied experiences and fact-intensive theories for each Coalition member's claims. The Motion should be granted without leave for repleading, as Plaintiffs offer this Court no basis for further amendment.

**ARGUMENT**

**I.    This Court Should Reject Plaintiffs' Efforts To Diminish The Pleading Standard.**

Throughout their brief, Plaintiffs suggest that something less than a rigorous application of the pleading standard applies here because MIT has not moved to dismiss all claims. They depict MIT's Motion as an "improper" effort to restrict the scope of discovery as the litigation proceeds on Doe's claims. Opp'n 2, ECF No. 69. These arguments reflect a fundamental misunderstanding of the Court's role in adjudicating a Rule 12(b)(6) motion. The question is not whether "this case should proceed to discovery," Opp'n 19 n.3, but whether the AC's well-pleaded factual allegations and the materials incorporated by reference plausibly sustain these claims. If not, these claims must be dismissed now even if others proceed. The fact that such dismissal may narrow the scope of discovery in the case is hardly "improper"—it is a central purpose of Rule 12 and its recognition that judicial and party resources should not be wasted on litigating allegations and theories that do not amount to a cognizable claim for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 557-58 (2007).

The pleading standard is important in another respect: it permits this Court to consider the materials incorporated by reference in the AC, which MIT attached as exhibits to its Motion. Plaintiffs do not seriously dispute this point. *See* Opp'n 19 n.3. MIT has identified the specific references in the AC for each of these exhibits, *see* ECF No. 47-1, and this Court can and should consider them. That is precisely how the First Circuit approached its *de novo* review of this Court's order dismissing *SWU*, which considered, for example, MIT's communications addressing a November 2023 protest and its actions vis-à-vis the Kresge Lawn encampment. *SWU*, 158 F.4th at 7, 22-23. These incorporated materials—which Plaintiffs chose to put into play—are appropriately considered, and they overcome subjective and conclusory characterizations in the

AC that are refuted by the very materials described therein. *Better Way Ford, LLC v. Ford Motor Co.*, 142 F.4th 67, 78 (1st Cir. 2025); *compare, e.g.*, Opp'n 10 & AC ¶ 225, ECF No. 17 (asserting that Professor DeGraff espoused a "*Jewish* mind infection" theory), *with* Ex. 10, ECF No. 47-11 (social media posts at issue that refer to a "settler-colonialist Zionist 'mind infection'" and "anti-Palestinian 'mind infection'").

## II.    The Title VI Claims At Issue Should Be Dismissed.

Setting aside only the parts of Doe's claims relating to his lab, on which MIT has not moved, Plaintiffs have not adequately alleged key elements of their Title VI claims.[1]

### A.    Recent And Binding Authority Reinforces MIT's Arguments For Dismissal.

Plaintiffs all but ignore the First Circuit's binding precedent in *SWU* illustrating how the pleading standard applies here and why it requires dismissal—as well as this Court's recent *Segev* decision faithfully applying *SWU* to dismiss analogous claims. *SWU* involved allegations about campus protest activity at MIT after October 7, 2023, along with allegations about five community members who claimed they were individually targeted for being Jewish and/or Israeli. *See* 158 F.4th at 5-10. The First Circuit reaffirmed four key legal principles that also compel dismissal here.

***First***, "expression on [the] highly publicized conflict in the Middle East" is "speech on a matter of public concern" within the First Amendment's protections, and the U.S. Constitution prohibits construing Title VI to require schools to punish it. *Id.* at 13 & n.10. Plaintiffs do not seriously dispute that principle and, like their counterparts in *SWU*, "base their claim so heavily on what the protestors said and wrote" that this Court must "consider first whether plaintiffs' proposed [Title VI claim] comports with First Amendment principles." *Id.* at 12. Sentiments in

---

[1] Plaintiffs have abandoned their direct-discrimination or disparate-treatment claim as to Alon and Sussman, *see* Opp'n 13-14 & n.2, which were fatally flawed, *see* MTD 9-11, ECF No. 47.

support of Palestinians or in opposition to the Israeli government constitute protected expression and thus cannot constitute actionable harassment. This is equally true of campus protests and of Professor DeGraff's criticism of a "settler-colonial" project by the Israeli government, MIT's relationship with the Israeli government, and other matters of public concern. *See* MTD 17.

**Second**, community members are not "guilty of antisemitism" by virtue of voicing opposition to Zionism, using contested slogans, applying the term "genocide" to the Israeli government's actions in Gaza, or disrupting campus operations. *SWU*, 158 F.4th at 12, 15-20. This is because "the possibility that antisemitism motivates" criticism of Israel cannot "justify assuming that *all* criticism of Israel or advocacy for Palestinian sovereignty is motivated by antisemitism." *Id*. at 18. Plaintiffs repeat that precise logical error here, claiming that the challenged actions were discriminatory harassment rather than policy disagreement. *E.g.*, Opp'n 18-19, 33, 39. Just as in *SWU*, Plaintiffs fail to allege facts permitting "the inference that in these specific circumstances the protestors' strident criticisms of Israel were driven by antisemitism." *SWU*, 158 F.4th at 18. Similarly, allegations that protesters interfered with campus operations for everyone, including Jewish and Israeli students, do not evince antisemitic animus. *Id*. at 19-20.

**Third**, even where specific instances of antisemitism are plausibly alleged, they are not actionable unless sufficiently severe and pervasive and actually reported to school officials who could take corrective action. *Id*. at 20-21. Title VI liability applies only to harassment with "the *systemic* effect of denying the victim equal access to an educational program or activity"—not isolated incidents. *Id.* at 21. The alleged harasser's role matters, too: harassment is much more likely to meet the law's exacting standard if the harasser exercises control over the plaintiff's educational access. *Id*. As in *SWU*, Plaintiffs here do not allege severe or pervasive harassment with the requisite systemic effect, nor do they allege that the totality of incidents they relied upon

were reported to appropriate MIT officials.[2] For example, Coalition Member #1 allegedly learned another MIT community member recognized him from a "curated list of Israelis maintained by graduate students"; Doe allegedly was shoved by a group of protestors in a parking garage on one occasion; and Alon and Sussman (an instructor and graduate student, respectively) were allegedly criticized by DeGraff—who was *a* professor but not *their* professor—in social media posts, articles, and emails. AC ¶¶ 96-150. Even if true (which MIT disputes), none of these allegations warrant a different outcome from *SWU*, which involved comparable allegations.[3]

**Fourth**, an institutional response is deliberately indifferent only if it is "so lax, so misdirected, or so poorly executed as to be clearly unreasonable under the known circumstances." *SWU*, 158 F.4th at 22-23. The standard is not whether the institution managed to "deter or eradicate" the harassment, nor whether the institution could have acted more quickly or decisively. *Id*. Similarly, institutions need not "craft perfect solutions" or cater to preferred remedial demands. *Id*. As the First Circuit explained, "MIT took an escalating series of actions aimed at calming the turmoil without violence" that met the required standard and "was much more effective than plaintiffs claim." *Id*. So too here. *See* MTD 12-16.

This Court's recent dismissal in *Segev* illustrates the proper application of these principles. *See Segev* Order. There, a Harvard graduate student alleged that he had been physically assaulted

---

[2] Plaintiffs insist that they have met the actual-notice requirement for all events alleged in the AC simply because the AC "is replete with examples" of MIT officials and departments having notice of some incidents. Opp'n 27 n.5. But that does not mean MIT administrators had actual notice of *every* instance alleged in the AC. Nor can Plaintiffs establish the requisite level of notice with the conclusory allegation that all incidents "were also known to the MIT administration." AC ¶ 59.

[3] Those allegations included that a protestor "raised the front wheels of his bike at [a plaintiff] and said, in reference to Holocaust victims, 'Your ancestors didn't die to kill more people'"; another shoved "[a] Jewish student recording the protest on her phone"; others blocked one plaintiff from entering a space on campus "because she was Jewish"; a speaker "urged listeners to go to MIT Hillel and confront MIT's Jewish students there about Gaza"; and a graduate student "authored a tweet equating Jews with Nazis." *SWU*, 158 F.4th at 6-7, 20 (quotation marks omitted).

during a pro-Palestine protest because he was Jewish and Israeli. This Court concluded that the student had not adequately alleged actionable harassment because his allegations established, at most, that protestors acted with "anti-Israel sentiment," not antisemitism. *Id*. Applying *SWU*, this Court explicitly rejected the claim that "certain rhetoric—for example, chants of 'from the river to the sea'"—could transform a policy disagreement into illegal discriminatory harassment. *Segev* Order. As for the "single, isolated incident of [alleged] antisemitism" that remained, it was "insufficient to establish severe and pervasive harassment" for purposes of Title VI. *Id*.

**B.    Plaintiffs' Efforts To Resist That Precedent Are Unavailing.**

In the face of the binding precedent in *SWU*, Plaintiffs make two primary arguments: (i) that this Court should instead follow non-binding, earlier-issued decisions involving a different institution, and (ii) that the AC's unique allegations render *SWU* inapposite. Neither succeeds.

*SWU* and *Segev* are key to resolving this Motion—not *Kestenbaum* or *Brandeis Center*. Plaintiffs misread their cited cases as holding that general protest activity can meet the demanding standard for actionable harassment, Opp'n 21, when in fact both involved materially different allegations of targeted physical intimidation and violence. *Louis D. Brandeis Ctr. for Hum. Rts. Under the L. v. Pres. & Fellows of Harvard Coll.*, 2024 WL 4681802, at *2 (D. Mass. Nov. 5, 2024); *Kestenbaum v. Pres. & Fellows of Harvard Coll.*, 743 F. Supp. 3d 297, 308-09 (D. Mass. Aug. 6, 2024). Indeed, in *Brandeis Center*, the university did not even dispute actionable harassment. *See* 2024 WL 4681802, at *5. If these cases mean what Plaintiffs say, *SWU* implicitly overruled them. Moreover, MIT's response was not "vacillating" or "contradictory," as this Court expressly held in *Kestenbaum* when distinguishing MIT's actions. 743 F. Supp. 3d at 310.

The allegations new to this pleading do not change the outcome. Plaintiffs claim to offer "numerous other events beyond those in" *SWU*, Opp'n 32, pointing mainly to their allegations

about vandalism of the Stata Center and distribution of so-called "terror maps" of buildings with connections to Israeli defense research. But these allegations have the same flaws as the allegations about general campus activities in *SWU*, which were not targeted at the plaintiffs, were not severe or pervasive, and/or did not inherently reflect antisemitic animus. *See supra* at 3-5; *see also SWU*, 158 F.4th at 6, 25 n.20 (discussing allegations, among others, of protests outside the offices of MIT's Israel internship program, "Free Palestine" written in chalk outside a vigil organized by Jewish students, and an individual unaffiliated with MIT urinating on the Hillel Center). Similarly, the allegation here that Alon was blocked from entering and exiting the encampment, Opp'n 23-24, is indistinguishable from the allegation about Ms. Boukin in *SWU*, 158 F.4th at 20. Nor has Alon—an instructor—alleged facts like those in *Frankel v. Regents of University of California*, where students "miss[ed] final[ exams] because they were blocked from entering classrooms" by an encampment. 744 F. Supp. 3d 1015, 1022 (C.D. Cal. 2024) (first alteration in original).

The allegations about DeGraff do not change the outcome here either. Plaintiffs attempt to frame DeGraff's writings as antisemitic, Opp'n 18-20, but once again, they fail to allege facts that would "permit the inference that in these specific circumstances," DeGraff's engagement with, and criticisms of, views expressed by Alon and Sussman were "driven by antisemitism." *SWU*, 158 F.4th at 18. Similarly, while Plaintiffs accuse DeGraff of teaching an "anti-Semitic seminar," Opp'n 3, 12, 13, they point to no well-pleaded facts that could support such a characterization (and even in their own briefing fall back on calling it an "anti-Israel seminar," *id*. at 11, 31).

Plaintiffs likewise fail to plausibly allege that MIT's response, endorsed in *SWU*, deteriorated into a "clearly unreasonable" response here. They dismiss repeated statements and updates from MIT leadership as "pa[ying] lip service," Opp'n 4, 27, despite the meaningful actions described in those communications that the First Circuit considered in assessing MIT's

reasonableness. *See SWU*, 158 F.4th at 22-23; Exs. 2, 5-7, ECF Nos. 47-3, 47-6 to 47-8. In particular, they disregard that MIT responded swiftly and forcefully to the specific events added to this pleading. *See* MTD 13-14. That includes MIT's response to Coalition Member #1's concerns: as the AC acknowledges, IDHR emphasized that it was "very concerned" and would "like to help" but needed more information to do so. AC ¶ 281; *see* Opp'n 7.

When it comes to how MIT handled Sussman's reports, they simply ignore one side of the communications described in the pleading itself—*i.e.*, MIT's prompt and repeated efforts to follow up with Sussman, understand his concerns, offer supportive resources, and conduct an investigation. *See* MTD 14. Where Plaintiffs do acknowledge those communications, they grossly mischaracterize them. *Compare, e.g.*, Opp'n 1, 13, 16, 28, 29 (asserting that IDHR "justified" DeGraff's conduct), *with* Ex. 15, ECF No. 47-16 (email incorporated by reference explaining to Sussman why HR was the appropriate office to investigate his complaint). And while Plaintiffs disagree with MIT's decision to close the HR investigation related to Sussman's reports, they acknowledge the policy states that MIT will "generally" continue an investigation "to the extent possible," AC ¶ 161, and elide that the investigation was closed, *see* Ex. 16, ECF No. 47-17, not simply because Sussman left MIT but because he thereafter declined to participate. *Contra* Opp'n 30.

As for Alon, Plaintiffs claim deliberate indifference because President Kornbluth did not personally provide a direct response both times he contacted her. *Id*. 28. Yet it is well-established that Title VI does not entitle community members to a personal response from the school official of their choice, let alone a response from the president of the institution during a period of heightened campus tensions. MTD 15; *see SWU*, 158 F.4th at 23 (citing *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999)). As the First Circuit recognized, MIT

was actively responding to the issues Alon raised, including the encampment that was the focus of his June 17 email to which President Kornbluth allegedly did not respond. *SWU*, 158 F.4th at 22-23. Nor was Alon entitled to the specific remedy that MIT request that DeGraff stop his conduct, *Id*. at 23, especially where there was no actionable harassment in the first place.[4]

### III.    Alon's Title VII Hostile-Environment Claim Should Be Dismissed.

The fundamental problem with Alon's Title VII claim is that the allegations fail to support actionable workplace harassment. Critically, Alon does not allege that any harassment was related to his status as an MIT *employee*, or that he suffered an adverse *employment* action. *See* MTD 22-23. To the extent his claim is based on DeGraff's alleged conduct, Plaintiffs themselves emphasize that "DeGraff was not Alon's supervisor[,] they did not work in the same department," and the alleged harassment "*had nothing to do with their job duties*." Opp'n 45 (emphasis added). The mere fact that Alon performed work at MIT does not transfigure every campus grievance he has into an employment dispute subject to Title VII. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *see*, *e.g.*, *Ponte v. Steelcase Inc.*, 741 F.3d 310, 321 (1st Cir. 2014).

Relatedly, the AC fails to allege incidents sufficiently "severe" or "pervasive" to "alter the conditions of [Alon's] employment and create an abusive work environment." MTD 23-24. *Landa* and *Fiss* do not help Plaintiffs. *Contra* Opp'n 38-39. In *Landa*, a university instructor alleged that she was "denied requested teaching roles without explanation," "deprived of teaching responsibilities," and "ultimately terminated." *Landa v. Univ. of Md. Coll. Park*, 2022 WL 2905094, at *7 (D. Md. July 22, 2022). In *Fiss*, where the court called the hostile-environment

---

[4] *Feminist Majority Foundation v. Hurley* does not suggest MIT was required to ask or require a professor to take down personal social media posts or retract articles to avoid Title VI liability, especially where those writings were not actionable harassment in the first place. 911 F.3d 674, 687 (4th Cir. 2018). Likewise, in *Garrett v. CUNY*, the relevant communications lacked First Amendment protection. 2025 WL 3096550, at *14 (S.D.N.Y. Oct. 10, 2025).

claim a "close call," allegations included, among others, that the plaintiff was investigated and disciplined for engagement with pro-Palestinian students against a backdrop where administrators had allegedly endorsed statements in apparent support of Hamas and a faculty member had yelled "F*ck the Zionists" at a faculty meeting "without any criticism or pushback." *Fiss v. Cal. Coll. of the Arts*, 2025 WL 91181, at *1-3, *6 (N.D. Cal. Jan. 14, 2025). The allegations cited in support of Alon's claim do not rise to the level of severe and pervasive harassment and, in all events, are far more attenuated from his employment.

Nor does Alon plausibly plead that the challenged expression was motivated by antisemitism, rather than deep ideological disagreements. Plaintiffs cite a string of allegations purportedly supporting "that Alon was attacked based on his Jewish and Israeli identity," Opp'n 39, but those (1) involve conduct that was not targeted toward Alon, *see, e.g.*, AC ¶ 89 ("Alon saw an Israeli flag that had been defaced with bloody handprints."); (2) relate to actions Alon affirmatively took, *see, e.g.*, *id.* ¶ 91 (DeGraff filmed Alon after Alon "approached Professor DeGraff and began translating the words [of the Israeli national anthem] into English for him"); *id.* ¶ 101 (Alon entered the encampment "by climbing over a fence at the rear of the encampment"); or (3) are entirely conclusory, *see, e.g.*, *id.* ¶ 384 ("Alon has been subjected to unwelcome harassment by DeGraff on the basis of being Jewish and Israeli."); *id.* ¶ 388 ("Alon's protected status has been a focal point for Professor DeGraff."). In short, Plaintiffs allege no facts "that, if true, would permit the inference that in these specific circumstances the protestors' strident criticisms of Israel"—or DeGraff's engagement with Alon—"were driven by antisemitism." *SWU*, 158 F.4th at 18.

## IV. Alon And Sussman Cannot Salvage Their Retaliation Claims.

Plaintiffs start their defense of the AC's retaliation claims by focusing on Doe, whose claims are not subject to this Motion, and the Coalition, which does not assert any retaliation claim

in the pleading and cannot do so through the opposition. *See* Opp'n 40.[5] As for Alon and Sussman, the allegations fail to sustain essential elements of their respective claims.

**Alon.** According to the AC, Alon emailed President Kornbluth with his concerns about protestors on campus (but no mention of DeGraff) on October 19, 2023. *See* AC ¶ 80. Many months later, in May and June 2024, DeGraff "aggressively filmed" Alon and criticized him in social media posts and articles. *Id.* ¶¶ 91, 97, 100-103. Alon allegedly complained by emailing President Kornbluth on June 17, 2024. *See id.* ¶ 104. Alon claims that DeGraff targeted him again over a year later in August 2025 with another social media post (that did not mention Alon by name), and otherwise continued to "disparage" him in private chats. *Id.* ¶¶ 103, 148, 150.

Plaintiffs fail to address the fatal flaws in this retaliation theory. To begin, the AC does not allege anything close to an "adverse action." Plaintiffs cite no legal authority for their contention that this element is satisfied through the type of conduct alleged here: social media posts and articles in which a fellow community member (not a supervisor) disagrees on matters of public concern and is vaguely alleged to have "disparage[d]" the plaintiff. Opp'n 13, 41. That omission is unsurprising: the law requires action that would dissuade a reasonable employee from "making or supporting a charge of discrimination," such as changes in job responsibilities or discipline. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68-72 (2006). A plaintiff cannot ground a harassment claim, for example, in "personality conflicts at work that generate antipathy" or "'snubbing' by … co-workers." *Id.* at 68. This element is assessed objectively, so the fact that Alon *felt* intimidated does not suffice either. MTD 25; *see* Opp'n 41.

As for causation, the AC does not allege that DeGraff knew about either of Alon's emails

---

[5] All *individual* Plaintiffs plead retaliation under Title VI (Count III), and Alon and Doe also plead retaliation under Title VII (Count VI) and Chapter 151B (Count IX). AC at 92, 101, 104.

to President Kornbluth, much less when he purportedly learned of them, rendering implausible the assumption that he retaliated in response. *See* MTD 25. Nor can a "close temporal proximity" solve that problem, *contra* Opp'n 41-42, given the nearly seven-month gap between the first email and DeGraff's first alleged action. *See Colburn v. Parker Hannifin/Nichols Portland Div.*, 429 F.3d 325, 337-38 (1st Cir. 2005) (finding four-month gap insufficient). The gap between Alon's second email and DeGraff's subsequent post is even longer. Finally, employer liability for purported retaliatory harassment by a non-supervisory employee would require that MIT responded negligently to reports of that retaliation, *see Vance v. Ball State Univ.*, 570 U.S. 421, 423 (2013), but neither of Alon's reports claimed that DeGraff was retaliating, *see* AC ¶¶ 80, 104; Exs. 1, 3, ECF Nos. 47-2, 47-4.

**Sussman.** Sussman concedes that his Title VI retaliation claim requires deliberate indifference by MIT toward the allegedly retaliatory actions of which it had notice. Opp'n 41. For all the reasons above, MIT was not deliberately indifferent to his reports, dooming this claim. It fails for other reasons too. The mere fact that DeGraff "continued" his existing disagreement with Sussman after Sussman first complained is not by itself evidence of retaliatory intent. *See* Opp'n 40-41. Plaintiffs rely on readily distinguishable cases involving new mistreatment by a *supervisor* after the plaintiff reported misconduct by a different employee (as in *Posada*), and intensifying harassment coupled with an *express statement* by the harasser that he would "get back at those who had participated in the MCAD suit against him" (as in *Setterlund v. Potter*, 2009 WL 3298095, at *12 (D. Mass. Aug. 7, 2009)). Plaintiffs once again fail to support their theory that a disagreement on a matter of public concern with a non-supervisory employee qualifies as an adverse action. And Sussman's subjective reaction—including declining to participate in MIT's investigation—does not satisfy the *Burlington Northern* objective standard.

12

**V.    The State Law Claims Asserted By Alon And Sussman Should Be Dismissed.**

Plaintiffs do not oppose MIT's argument that the Court should decline to exercise jurisdiction over Alon's and Sussman's state-law claims should it dismiss their federal claims. *See* MTD 26. Plaintiffs have thereby conceded the issue, *see Sandstrom v. ChemLawn Corp.*, 904 F.2d 83, 86 (1st Cir. 1990), and this Court need not go further.

In all events, the AC fails to state a claim for any violation of state law as to Alon or Sussman. Plaintiffs acknowledge that their claims under Massachusetts General Law Chapter 151B cannot succeed where their corresponding federal claims fail. *See* Opp'n 44. Nor does Massachusetts law permit common-law claims that are merely statutory antidiscrimination claims "dresse[d]" in "different outfits," *Mouradian v. Gen. Elec. Co.*, 23 Mass. App. Ct. 538, 543 (1987), which is all Alon and Sussman offer here. *See* AC ¶¶ 433, 439, 444.

Alon cannot overcome the exclusivity bar in Massachusetts's workers' compensation law. *See* MTD 26-27. Plaintiffs cite *Ruffino v. State St. Bank & Trust Co.*, which only reinforces MIT's argument: it allowed a claim by an employee *against a fellow employee, not an employer*. 908 F. Supp. 1019, 1049 (D. Mass. 1995). *Ruffino* thus fits the exception to the exclusivity bar "when an employee brings an action *against a fellow employee* who commits an intentional tort which was in no way within the scope of employment furthering the interests of the employer." *Spagnuolo v. Holzberg*, 98 Mass. App. Ct. 661, 665 (2020) (citation modified). Plaintiffs also cite *Sheldon v. F.W. Webb Co.*, 2025 WL 2778018 (D. Mass. Sept. 26, 2025), which is inapposite because it involved a vicarious liability theory against the employer, in contrast to the theory asserted here based on MIT's own alleged conduct, AC ¶¶ 433-446, and because the employer in *Sheldon* forfeited any argument about the exception.

In addition, Alon and Sussman do not plausibly allege key elements of their claims, including "extreme and outrageous" conduct. They rely on cases involving sustained verbal,

sexual, and physical harassment and humiliation of young college students by professors with "direct control" over their grades. *Shyr v. Trs. of Bos. Univ.*, 2017 WL 1014999, at *2-3 (D. Mass. Mar. 13, 2017), *Russell v. Salve Regina Coll.*, 649 F. Supp. 391, 402 (D.R.I. 1986). By contrast, Alon and Sussman lack any "particularly vulnerable relationship" vis-à-vis DeGraff. *Shyr*, 2017 WL 1014999, at *7.

As for Alon's negligent-infliction claim, Plaintiffs assert a broad and ill-defined "general duty of care to all people not to engage in negligent behavior that would harm them." Opp'n 47. But Plaintiffs' theory is that MIT owed a duty to *stop DeGraff* from purportedly harming Alon through protected speech. None of Plaintiffs' cases establish such a duty; at most, their cited cases establish a duty to refrain from obviously harmful conduct, such as filing "baseless legal actions," *Taylor v. Swartwout*, 445 F. Supp. 2d 98, 105 (D. Mass. 2006), or engaging in "cyberattacks," *Wofse v. Horn*, 523 F. Supp. 3d 122, 137 (D. Mass. 2021). Plaintiffs also muster no support for their assertion that MIT "owed a duty to enforce its policies against harassment" that can sustain this negligent-infliction claim. Opp'n 47. Such claims are properly brought under federal and state anti-harassment laws, not state common law. *Cf. Doherty v. Emerson Coll.*, 2017 WL 4364406, at *10 (D. Mass. Sept. 29, 2017).

## VI.    The Coalition's Claims Should Be Dismissed For Lack of Standing.

The opposition highlights why the Coalition lacks associational standing for injunctive relief: its claims are derivative of individuals with vastly different experiences, legal theories, and purported injuries. *See, e.g.*, Opp'n 22, 26, 37-38, 40, 43. Plaintiffs suggest *Parent/Professional Advocacy League* has no bearing because the court "found there was no alleged 'common practice,'" Opp'n 44, yet that is precisely why that case matters. There, instead of challenging a uniformly applicable policy, the association advanced claims on behalf of its members that "would

turn on facts specific to each student." *Parent/Professional Advocacy League v. City of Springfield*, 934 F.3d 13, 35 (1st Cir. 2019). As a result, "[e]fficient and successful" resolution of the claims demanded "participation and cooperation by numerous students." *Id*. Nor did it suffice, as Plaintiffs claim here, that "the requested injunctive relief will inure to the benefit of all injured … members." Opp'n 44; *see Parent/Professional Advocacy League*, 934 F.3d at 35. The Court must instead consider the substantive claims the Coalition purports to advance for its members— statutory claims with numerous elements examining, for instance, whether each member was denied access to educational opportunity and whether MIT had notice of and adequately responded to their particular complaints. *See* MTD 29-30. Asserting that "MIT's campus was overall filled with a common practice of anti-Jewish hate," Opp'n 44, stops short of what the Coalition's members would have to prove on their individual claims. Indeed, compared to *SWU*, the claims here are even more focused on the individualized experiences of specific community members, which are thus even less susceptible to common proof. *See* AC ¶¶ 62-272.

## CONCLUSION

Plaintiffs have already amended their pleading once, with the benefit of two prior pleadings in *SWU*, MIT's corresponding motions to dismiss, and decisions from this Court and the First Circuit addressing closely analogous allegations and claims. Against that backdrop, Plaintiffs are not entitled to yet another try. *See Fire & Police Pension Ass'n of Colo. v. Abiomed*, 778 F.3d 228, 247 (1st Cir. 2015). Their "single sentence" request for leave to amend, *see* Opp'n 50, is indistinguishable from the request in *SWU*, where this Court dismissed without leave to amend and the First Circuit affirmed. 158 F.4th at 26-27. Moreover, this "bare" request offers "no suggestion that amendment would be anything other than futile." *Abiomed*, 778 F.3d at 247. The Motion should be granted without leave for repleading.

Date: December 22, 2025

Respectfully submitted,

MASSACHUSETTS INSTITUTE
OF TECHNOLOGY,

Daniel J. Cloherty (BBO# 565772)
dcloherty@clohertysteinberg.com
617.481.0610
CLOHERTY & STEINBERG LLP
One Financial Center, Suite 1120
Boston, MA 02111

*/s/ Ishan K. Bhabha*
Ishan K. Bhabha (*pro hac vice*)
IBhabha@jenner.com
202.637.6327
Lauren J. Hartz (*pro hac vice*)
LHartz@jenner.com
202.637.6363
JENNER & BLOCK LLP
1099 New York Avenue, N.W., Suite 900
Washington, DC 20001-4412

## CERTIFICATE OF SERVICE

I certify that a true copy of this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on December 22, 2025.

_/s/ Ishan K. Bhabha_
Ishan K. Bhabha