**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| WILLIAM SUSSMAN, et al., | |
| *Plaintiffs*, | |
| v. | Case No. 1:25-cv-11826-RGS |
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY and MICHEL DEGRAFF, | |
| *Defendants.* | |

**MEMORANDUM OF LAW IN SUPPORT OF
JOINT MOTION FOR PROTECTIVE ORDER**

The parties submit this memorandum in support of their joint motion for a protective order. The parties agree that a protective order is necessary here. Consistent with their obligations under the Federal Rules of Civil Procedure and this Court's Local Rules, the parties have engaged in extensive negotiations and multiple conferrals via phone and videoconference and have finalized most of the terms of their proposed protective order. *See* Fed. R. Civ. P. 26(c)(1) ("The motion [for a protective order] must include a certification that the movant has in good faith conferred or attempted to confer with the affected parties in an effort to resolve the dispute without court action"); Loc. R. 37.1(a) ("Before filing any discovery motion, including any motion for sanctions or for a protective order, counsel for each of the parties shall confer in good faith to narrow the areas of disagreement to the greatest possible extent"). However, they have reached an impasse on two provisions and respectfully request the Court's intervention in resolving this dispute.[1]

---

[1] The parties' respective proposed protective orders are attached in full as Exhibits A (MIT) and B (Plaintiff). A document comparing Exhibit A to Exhibit B is attached as Exhibit C; Plaintiff's proposed changes to MIT's version appear as redlined edits under the name "Plaintiff Doe."

## BACKGROUND

The operative pleading in this case includes claims brought by three individual MIT community members (including Plaintiff John Doe, hereinafter "Plaintiff" or "Doe"), as well as a membership organization, The Louis D. Brandeis Center Coalition to Combat Anti-Semitism, against MIT and one of its faculty members, Michel DeGraff, regarding allegations of antisemitism and MIT's efforts to address such issues. Given the sensitive nature of these issues and the allegations in this case, the Court granted Plaintiff John Doe's request to proceed under a pseudonym. ECF Nos. 18, 74.

On January 5, 2026, the Court granted MIT's partial motion to dismiss and DeGraff's motion to dismiss, dismissing all claims by two of the community members and the membership organization. ECF No. 75. The only remaining claims for discovery are Plaintiff John Doe's claims against MIT.[2] On January 6, the Court entered a scheduling order governing the timing and scope of discovery. ECF No. 76.

Considering certain highly sensitive and personal information is expected to be produced during discovery, the parties agree that a protective order would be appropriate in this case and have worked to reach consensus on the order's terms. The parties engaged in good faith negotiations for approximately three months and were able to significantly narrow the issues, but two disputed provisions remain.

## THE PARTIES' PROPOSALS ON TWO DISPUTED ISSUES

Under Federal Rule of Civil Procedure 26(c), "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending." Upon a showing of "good cause," the court may "issue an order to protect a party or person from

---

[2] The parties disagree about the scope of Plaintiff's claims.

annoyance, embarrassment, oppression, or undue burden or expense," including "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Rule 26 "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Gardner v. Cape Cod Healthcare, Inc*., 344 F.R.D. 127, 132 (D. Mass. 2023) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

The parties agree and submit that good cause supports entry of a protective order in this case. It is virtually certain that discovery will require production of personal, confidential, or otherwise sensitive material, including: documents containing student information protected from disclosure by the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g; other forms of personally sensitive student and employee information recorded in education and personnel files; financially sensitive information, which would also encompass proprietary, technical, or commercially sensitive competitive information; and information that would identify individuals proceeding under a pseudonym, including Plaintiff Doe. Good cause therefore exists to enter a protective order that governs the access and use of such information and designates procedures for how to handle it. *See, e.g.*, Protective Order, *Apple Inc. v. Sand Media Corp Inc.*, No. 1:25-cv-12173 (D. Mass. Dec. 7, 2025), ECF No. 49.

The parties respectfully request that the Court enter a protective order including the agreed-upon provisions in Paragraphs 1 through 14 and 17 through 29. The parties disagree on two paragraphs of the order and have set forth their respective proposals and positions below.

## I.    DISPUTED LANGUAGE IN PARAGRAPH 15

MIT's Proposal:

> All Discovery Material produced in this action, whether or not designated as Confidential Information, shall be used by the Party (including their legal counsel) receiving such

Discovery Material solely in connection with the prosecution or defense of this litigation and for no other purpose. Plaintiff specifically acknowledges that his designated legal counsel at the Louis D. Brandeis Center for Human Rights Under Law, including attorneys and support staff employees of the Louis D. Brandeis Center for Human Rights Under Law to the extent reasonably necessary to assist Plaintiff in this litigation, can receive, review, and use Discovery Material only in their capacity as Plaintiff's legal counsel in this action and cannot disseminate Discovery Material to anyone at The Louis D. Brandeis Center Coalition to Combat Anti-Semitism, which is no longer a Plaintiff in this action.

Plaintiff Doe's Proposal:

All Discovery Material produced in this action which any party has designated as Confidential Information, or which contains Identifying Information (as defined in Paragraph 20), shall be used by the Party (including their legal counsel) receiving such Discovery Material solely in connection with the prosecution or defense of this litigation and for no other purpose, and shall not disseminate such material to any person except as provided in Paragraph 16 of this Order.

MIT's Position:

MIT's position is consistent with First Circuit and District of Massachusetts authority recognizing the benefits of limiting the disclosure and use of discovery material, including nonconfidential material, based on the particular needs of the case. Courts have recognized that such limitations are "useful in expediting the flow of pretrial discovery materials," *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 790 (1st Cir. 1988), including because they help "avoid the time consuming, inefficient process of a document by document review," *United States v. Bulger*, 283 F.R.D. 46, 52 n.11 (D. Mass. 2012), and the extra protection they afford "may lead a party to be more forthcoming in discovery," *Pub. Citizen*, 858 F.2d at 791; s*ee also United States ex rel. Franklin v. Parke-Davis*, 210 F.R.D. 257, 260 (D. Mass. 2002) (recognizing that such protection can facilitate discovery by avoiding disputes about what ought to be disclosed); *cf. Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993) ("Judges have found in many cases that effective discovery, with a minimum of disputes, is achieved by affording relatively generous

4

protection to discovery material."). Those rationales weigh in favor of MIT's proposed language.[3]

Ensuring that material produced in discovery and that is not available from any other source is used to further this litigation, and not for other, unrelated purposes, will facilitate a smoother discovery and production process. It will help narrow or avoid potential disputes over materials that could expose nonparty members of the MIT community to harassment and related harms or be exploited for unrelated ends, or both. MIT had been under the impression that Plaintiff agreed, as this limitation appeared in his own drafts until very recently.

MIT has shown good cause for the proposed language because that language will protect the sensitive information and material at stake in this matter. In Plaintiff's own words, litigating the issues in this case raised for him a "justified fear" of "harassment and retaliation." ECF No. 19 at 2. Indeed, Plaintiff previously sought additional protection by requesting to proceed under a pseudonym. *Id.* at 18. This Court granted his request, recognizing the possibility that disclosure of Doe's identity "would create a significant risk of harm" that warranted additional protective measures. *Id.* at 74. This background, including Plaintiff's representations about the sensitivity of the issues in this case and even the potential for harassment, demonstrates the importance of an order limiting the parties' ability to disseminate and potentially publicize discovery materials.[4]

---

[3] While some of these cases ultimately rejected restrictions on the use of non-confidential discovery material, those cases were materially distinct because none involved an order granting pseudonymity, nor claims regarding matters as sensitive as those at issue here. *See Parke-Davis*, 210 F.R.D. at 257-58 (involving allegations that the defendant company made false Medicaid claims in connection with the marketing and sale of a drug); *Pub. Citizen*, 858 F.2d at 776-77 (involving claims against cigarette manufacturer based on allegedly inadequate warnings). The same holds for *Baker v. Liggett Grp., Inc.*, which Plaintiff cites. *See* 132 F.R.D. 123, 125-26 (D. Mass. 1990) (addressing protective order in context of breach of warranty and product liability claims).

[4] Documented cases of doxxing and harassment across the country related to these issues only underscore the importance of a robust protective order in this case. *See, e.g.*, Andy Rose, Amanda Musa and Elizabeth Wolfe, *The Biggest Takeaways from Harvard's Task Force Reports on Campus Antisemitism and Anti-Muslim Bias*, CNN (May 1, 2025, at 22:42 ET),

Indeed, it would be inequitable for Plaintiff to be allowed to maintain complete anonymity while being allowed to disclose the names or other personally identifying information of other MIT community members.

Limiting the use of Discovery Material solely to the prosecution or defense of this litigation also prevents abuse of the discovery process by prohibiting the parties from exploiting their access to such material to achieve unrelated ends. *See Seattle Times Co.*, 467 U.S. at 35-36 (describing the importance of protective orders in minimizing "abuse that can attend the coerced production of information" required by civil discovery). Following the Court's order granting MIT's partial motion to dismiss, the remaining claims in this cause are related to alleged harassment and retaliation that Plaintiff Doe experienced in connection with Professor Roe's research group. The case no longer includes claims related to "more general allegations about alleged discrimination on the MIT campus" that may be addressed in other pending proceedings, as discussed below. *See* ECF No. 75 (Jan. 5, 2026, docket-only order). Despite that, Plaintiff has demanded a wide range of discovery on issues that have nothing to do with him or his experiences in Professor Roe's labs—a stark illustration of what is at stake here. *See, e.g.*, Pl. John Doe's First Set of Reqs. for Admis. to Def. MIT, Req. No. 29 ("Admit that MIT Professor Michel DeGraff ('Professor DeGraff') published personally identifiable information about William Sussman and Lior Alon on websites or social media sites after Sussman and Alon raised concerns alleging Relevant Conduct at MIT, including by Professor DeGraff."); Pl. John Doe's First Set of Reqs. for Produc. to Def. MIT, Req. No. 27 ("All Documents and Communications concerning William Sussman or Lior

---

https://www.cnn.com/2025/04/29/us/harvard-reports-antisemitism-anti-muslim-bias(describing doxxing and harassment of university affiliates); Tovia Smith, *Colleges Face Pressure to Curb Antisemitism and Islamophobia*, NPR (Nov. 11, 2023, at 5:00 ET), https://www.npr.org/2023/11/11/1211234951/colleges-face-pressure-to-curb-antisemitism-and-islamophobia (same).

Alon."). The concern that Plaintiff will use discovery on his narrow claims to further broader goals is heightened here in light of other proceedings on similar and related issues, including both an ongoing EEOC proceeding and an ongoing congressional investigation that has itself led to additional litigation. *See* Am. Compl. ¶ 304, ECF No. 17; *DeGraff v. MIT*, No. 1:26-cv-11488 (D. Mass. filed Mar. 28, 2026). Indeed, Plaintiff's responses to MIT's interrogatories confirm that Plaintiff's counsel is coordinating with entities unrelated to this case. *See* Pl.'s Resp. to Interrog. Nos. 18 & 19 (describing Plaintiff's counsel's communications related to the ongoing congressional investigation and with the investigator assigned to the EEOC charge filed by the Coalition, which includes allegations regarding Plaintiff). The narrow scope of the remaining claims, coupled with these admissions, establish "a particular factual demonstration of potential harm" and counsel in favor of a more limited approach to the use of Discovery Material. *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7-8 (1st Cir. 1986) (holding district court had good cause to enter protective orders in the first instance, despite narrowing them).[5]

Finally, MIT's proposal to restrict dissemination of Discovery Material to a former plaintiff will help avoid any misunderstandings about who is entitled to such material and ensure a smooth and fair discovery process that is faithful to the Court's motion to dismiss ruling. As the Court knows, multiple Brandeis Center entities have been involved in this litigation: the Louis D. Brandeis Center for Human Rights Under Law currently represents John Doe as legal counsel, while the Louis D. Brandeis Center Coalition to Combat Antisemitism is no longer a party to this case, following the court's decision on MIT's motion to dismiss. *See* ECF No. 75. The risk of abuse of the discovery process is plain: allowing the only remaining plaintiff in this case to channel

---

[5] Contrary to Plaintiff's suggestion, MIT is not afraid "of being held to account in a court of law." *Infra* at 11. That is clear from the fact that nothing in the proposed Protective Order prevents Plaintiff from using Discovery Material *in this litigation*.

Discovery Material to a former plaintiff that failed to persuade the Court that it should proceed to discovery would create an end-run around the Court's motion to dismiss ruling. And because the Coalition is an advocacy organization that employs various tools, "including litigation," Am. Compl. ¶ 21, ECF No. 17, to work on issues that overlap with the allegations in this case, there is both opportunity and incentive for the Coalition to use sensitive Discovery Material produced here for other purposes. The Court's motion to dismiss ruling narrowed the issues and parties in this case, and the scope and conduct of discovery is and must be bounded by that ruling. Plaintiff's failure to agree to this limitation only underscores its necessity.

Finally, for avoidance of doubt, MIT's proposed language would not prevent either party from using materials produced in discovery if those materials are also available through another source, including publicly available information, even if also produced in discovery.

Plaintiff Doe's Position:

MIT's position that the protective order should limit disclosure of "*all* Discovery Material" produced in this action, without limitation—including non-confidential and even *public* material— is unjustified. Plaintiff Doe does not dispute that confidential non-public material, and material that would jeopardize Plaintiff's pseudonymity or subject nonparties to harmful public exposure, should be restricted in their use such that they can only be used to prosecute this litigation. Plaintiff's proposed language explicitly protects from broader dissemination not only Confidential Information, but also "Identifying Information (as defined in Paragraph 20)." Identifying Information includes the names, titles, and "any information that could be used to identify" Doe, Professor Roe, any MIT students, and any MIT officers and employees other than those "employed in central MIT administrative offices." The parties have already agreed that such information must be redacted from public filings—and Plaintiff's proposal would further protect such information

from disclosure to anyone other than the limited persons enumerated in Paragraph 16 (parties, counsel, litigation support, deponents, etc.). Plaintiff's proposal thus confers substantial protection not only on Doe, but on nearly *all* MIT community members including the key individuals implicated in this action. A further complete ban on the dissemination of non-confidential and even public material is not warranted nor justified.[6]

MIT's proposal, however, would turn non-confidential and even already-public information into confidential discovery material. MIT's position is a clear departure from standard litigation practice and the practice of this Court. On at least three occasions—in an earnest effort to exhaust meet-and-confer efforts before bringing this dispute before the Court—Plaintiff's counsel requested that MIT's counsel justify their maximalist position, and offered to review any legal authority that might support it. MIT's counsel was unable to provide such justification and support, because none exists.[7]

In this Court's "Standing Order re: Default Protective Order in Complex Cases Filed Before Stearns, D.J.," the Court provides that the default rule is to impose restrictions only on "[d]ocuments and information that either party in good faith believes is confidential" and has so designated. Indeed, courts in the First Circuit have recognized that restrictions on non-confidential discovery material are "overinclusive" and should be rejected. *See U.S. ex rel. Franklin v. Parke-Davis*, 210 F.R.D. 257, 259-261 (D. Mass. 2002) (denying defendant's request for a protective order that "bar[red] nonlitigatory use of all materials provided during discovery," including "non-confidential materials," as "overinclusive in violation of the first amendment"); *see also Baker v.*

---

[6] While irrelevant to the present dispute about the protective order, Doe disagrees with MIT's characterization of what allegations remain in the case and the parties will be separately meeting and conferring about the proper scope of discovery.

[7] The authority finally offered by MIT during the parties' exchange of arguments for this motion, *Franklin v. Parke-Davis* and *Public Citizen v. Liggett Group, Inc.*, actually support Doe's position.

*Liggett Group, Inc.*, 132 F.R.D. 123, 125-26 (D. Mass. 1990) (entering a protective order with "no restriction imposed on the dissemination and use of non-confidential information produced in discovery," over objection of defendants who requested an "'umbrella' protective order prohibiting dissemination of both confidential and non-confidential documents"); *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 790 (1st Cir. 1988) ("[B]lanket protective order[s], that is, … order[s] extending broad protection to all documents produced by [a party], without a showing of good cause for confidentiality as to any individual documents[,] … are by nature overinclusive.").

It is also standard litigation practice for parties to be able to disseminate non-confidential information, even if they learned of the information through the discovery process. This is because "[p]arties to litigation 'have general first amendment freedoms with regard to information gained through discovery and … absent a valid court order to the contrary, they are entitled to disseminate the information as they see fit.'" *Parke-Davis*, 210 F.R.D. at 259 (quoting *Public Citizen*, 858 F.2d at 780). MIT can only overcome Plaintiff Doe's "constitutional right" if MIT demonstrates "good cause" to restrict it. *Id.* at 59-60; *see also Bock v. Daimler Trucks N.A. LLC*, No. 3:24-cv-30099, 2025 WL 3295525, at *2 (D. Mass. Nov. 26, 2025) ("When there is a dispute between the parties about the scope of a protective order, the party seeking confidentiality has the burden of showing good cause for the order it seeks.").

Good cause must be "based on a particular factual demonstration of potential harm, not on conclusory statements." *Id.* at *1 (quoting *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986)); *see also United States v. Bulger*, 283 F.R.D. 46, 52 (D. Mass. 2012) ("Good cause also requires a particularized, specific showing."). A general desire to "obviate expense and speed[] up the litigation by eliminating the need for a document-by-document review for confidentiality" is not

good cause when the defendant is a "sophisticated part[y] well represented by counsel," especially where such counsel has "aggressively litigated this case to date," such as by "battling over the words of the protective order" and "haggling over the scope of discovery." *Parke-Davis*, 210 F.R.D. at 260.

MIT's argument indicates that they are interpreting their proposed language even more broadly than the language suggests—that they seek to prohibit the Brandeis Center from using discovery material (whether confidential or not) from prosecuting the claims of other plaintiffs *in this case*. MIT's argument is unsupported by any case law and conflicts with the Federal Rules of Civil Procedure. The other plaintiffs remain parties to this case and may seek reconsideration if facts emerge in discovery that support their claims. FRCP 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties *does not end the action as to any of the claims or parties* and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.") (emphasis added).[8] And there is nothing unjust about that potentiality. If discovery material adduced in this action reveals that the other plaintiffs have colorable civil rights claims, it is in the public interest to ensure they are fully adjudicated. MIT's fear of being held to account in a court of law is not the type of "annoyance, embarrassment, oppression, or undue burden or expense" contemplated by Rule 26, and which is required to establish good cause for the unusually restrictive protective order it seeks.[9]

---

[8] Courts in this district have even allowed sharing provisions for plaintiffs to disseminate *confidential* discovery material to litigants and lawyers in "similar cases" for efficiency purposes. *Baker*, 132 F.R.D. at 126.

[9] This is particularly so where allegations of MIT's indifference to anti-Semitism on its campus have already received significant public attention, including multiple lawsuits, a Congressional investigation involving several televised hearings, and significant press coverage.

11

Plaintiff respectfully requests that the Court enter a protective order with Plaintiff Doe's proposed Paragraph 15.

## II.    DISPUTED LANGUAGE IN PARAGRAPH 16

MIT's Proposal:

> Subject to any further agreement between the Parties or Court order to the contrary, Defendant specifically acknowledges that it will not disclose any Discovery Material designated as Confidential Information regarding Plaintiff's pending job applications to Professor Richard Roe, except to the extent necessary to prepare Professor Roe for deposition in this action.

Plaintiff Doe's Proposal (additional language in bold):

> Subject to any further agreement between the Parties or Court order to the contrary, Defendant specifically acknowledges that it will not disclose any Discovery Material designated as Confidential Information regarding Plaintiff's pending job applications to Professor Richard Roe, except to the extent necessary to prepare Professor Roe for deposition in this action. **Defendant further agrees that Professor Roe shall not disparage Plaintiff to any institution at which Plaintiff has a pending job application, and shall not initiate any communications regarding Plaintiff with any such institution.**

MIT's Position:

Plaintiff seeks to impose one-way restrictions on a nonparty MIT employee that would effectively award Plaintiff preliminary injunctive relief prior to any adjudication of the merits of his claims, and without any motion for such relief. This puts the cart before the horse and is, in any event, unnecessary in light of the provisions on which the parties have already agreed.

*First*, Plaintiff's proposal is not a proper request for a protective order—it is an unsupported request for injunctive relief that is not about discovery material at all. *See Kelley v. Duboise*, 57 F.3d 1061 (1st Cir. 1995) (unpublished table decision) (construing protective order seeking "an order forbidding defendants from retaliating against [the plaintiff] for having sued defendants" as motion for preliminary injunctive relief and affirming denial of motion). Obtaining such relief would require Plaintiff to file a motion for a preliminary injunction and establish that: he is likely

12

to succeed on the merits (including as to the Court's ability to enjoin the conduct of a nonparty); he will suffer irreparable harm absent an injunction; the balance of the equities weighs in his favor; and the public interest favors injunctive relief. *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008). Courts reject efforts to use protective orders as a Trojan horse for injunctive relief, particularly when the requesting party has failed to make the required showing. *See, e.g.*, *Noble v. Ne. Ill. Reg'l Commuter R.R. Corp.*, No. 10-cv-6821, 2014 WL 13111076, at *1 (N.D. Ill. Sept. 29, 2014) (denying motion for protective order "to the extent [it sought] protection from … harassment," which could only be granted "through a temporary restraining order or injunction"); *Pinson v. Kasdon*, No. 13-cv-01384, 2014 WL 811735, at *3 (D. Colo. Feb. 28, 2014) (denying motion for protective order seeking to "prohibit[] the parties from threatening other parties [and/or] witnesses in this case" because motion sought injunctive relief yet failed to establish factors for injunctive relief). This Court should do the same.

It is not only form, but substance, that stands in the way of Plaintiff's request. Plaintiff cannot satisfy the preliminary injunction factors, particularly since Roe is not a party to this action. *See, e.g.*, *Norgaard v. United States*, No. 16-cv-12107-FDS, 2016 WL 6562043, at *2 (D. Mass. Nov. 3, 2016) ("Except in limited circumstances not relevant here, a court may not order injunctive relief as to non-parties to an action."). An injunction against an allegedly discriminating or harassing supervisor is typically not available under Title VII, *see, e.g.*, *Fantini v. Salem State Coll.*, 557 F.3d 22, 29 ("The relief granted under Title VII is against an employer, not individual employees whose actions would constitute a violation of the Act." (quoting *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991)), nor pursuant to a claim against an employer under Chapter 151B, which also allows claims against individual supervisors, *see Thomas v. Liv Grp., Inc.*, 791 F. Supp. 3d 200, 212 (D. Mass. 2025). Indeed, likely for precisely these reasons, the

Amended Complaint does not seek injunctive relief limiting Roe's conduct at all. *See* Am. Compl., Prayer for Relief ¶¶ 11–12, ECF No. 17.

Moreover, Rule 26, which governs protective orders, "is not a blanket authorization for the court to prohibit disclosure of information whenever it deems it advisable to do so, but is rather a grant of power to impose conditions on *discovery* in order to prevent injury, harassment, or abuse of the court's processes." *Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940 (2d Cir. 1983) (emphasis in original) (granting writ of mandamus where district court improperly invoked Rule 26 to bar a party from using materials it had obtained outside the discovery process); *see also, e.g.*, *Hache v. AIG Claims, Inc.*, 607 F. Supp. 3d 100, 109-10 (D. Mass. 2022) (rejecting request to require a party to return or destroy documents from a different lawsuit because "[Rule 26] provides no authority for the issuance of protective orders purporting to regulate the use of information or documents obtained through means other than discovery in the pending proceeding"). As laid out above, Plaintiff's proposed term is not a "condition[] on discovery" at all and Plaintiff has identified no basis for deploying Rule 26 to achieve such ends.

*Second*, Plaintiff's proposal is entirely unnecessary in light of the agreed-upon terms of the proposed protective order. Those terms *already address* Plaintiff's stated concern that Roe will use information regarding Doe's currently pending job applications to initiate communications regarding Doe or retaliate against him. In the interest of trying to resolve this dispute, MIT has agreed to additional restrictions that apply only to Professor Roe: As noted above, MIT has agreed not to disclose any Confidential Discovery Material regarding Plaintiff's pending job applications to Roe, other than as needed to prepare Roe for a deposition in this action. Exhibit A, Proposed Protective Order ¶ 16. As a result, Roe will, at most, use such information to prepare for his own deposition.

Even this restriction is redundant. The agreed-upon portions of Paragraph 16 provide that Confidential Discovery Material—including documents relating to Plaintiff's pending job applications, which are Confidential because they contain Identifying Information, *see* Exhibit A, Proposed Protective Order ¶¶ 1, 20—may only be disclosed to MIT employees if they are "directly involved in assisting or supervising MIT or their counsel in connection with this litigation," and then only "to the extent reasonably necessary to assist MIT's counsel in this litigation." *Id.* ¶ 16(b). In addition, under either party's proposed version of Paragraph 15, Confidential Discovery Material about Doe's pending job applications may be used "solely in connection with the prosecution or defense of this litigation and for no other purpose." *Id.* ¶ 15. (MIT's proposal, which extends this restriction to *all* Discovery Material, not just Confidential Discovery Material, is even more protective of both parties.) Together, these provisions ensure that MIT will use information about Doe's pending job applications only for its defense in this litigation, that it can share this information with Roe only as needed to assist in that defense, and that Roe cannot use such information outside the bounds of this case, including to "initiate" communications regarding Doe with any prospective employers. That is more than sufficient to address Plaintiff's concern.

*Third*, while it is premature to determine the merits of Plaintiff's retaliation claim, MIT vigorously disputes Plaintiff's assertions below. For example, while MIT did state in its discovery responses that Professor Roe communicated with prospective employers after he learned of Plaintiff's complaints, leaping to the conclusion that such actions were retaliatory is entirely unfounded, unreasonable, and inappropriate. Those same discovery responses state that "Plaintiff's appointment was not renewed for an optional third year in light of Plaintiff's performance." *See* Def. MIT's Resp. to Pltf.'s First Set of Interrogs. at 17 (Apr. 15, 2026). Discovery will show that Professor Roe and others in the research group raised significant concerns about Plaintiff's

15

competence and professionalism beginning well before any of Plaintiff's complaints were disclosed to Professor Roe. Nor has Plaintiff provided any substantiation for the inflammatory statement that Plaintiff lost a job opportunity at another university "explicitly because of Professor Roe's retaliatory intervention," *infra* at 17, or that any other communications were retaliatory. It is wholly premature to resolve whether those communications were in fact retaliatory.

MIT has attempted in good faith to reach a workable compromise on Paragraph 16, but MIT cannot agree to Plaintiff's demand to enjoin Professor Roe's communications, particularly given the demand has no plausible connection to Discovery Material at all. Professor Roe is an active member of a small research community; it is expected that, if asked, he may share his impressions of Plaintiff with colleagues and professional acquaintances to assist in their hiring efforts. It is unrealistic to expect him to refrain from sharing the kind of routine communications about a former supervisee that are common in his profession, and importantly, there is no legal basis whatsoever for imposing such a restraint on the conduct of a nonparty. Plaintiff's proposed limitation on "disparagement" is equally unreasonable. Over the course of this litigation, Professor Roe may receive questions or reference requests regarding Plaintiff from his professional contacts. Plaintiff's vague ban on "disparagement" would forbid Professor Roe from providing honest, critical feedback. Responding to such inquiries honestly and in the normal course of business is not retaliation just because Plaintiff says so. MIT respectfully requests that the Court enter its proposed version of Paragraph 16.

Plaintiff Doe's Position:

The particular circumstances of this action necessitate a reasonable guarantee from MIT that, if Plaintiff Doe produces discovery information about each of his currently pending job applications (as demanded by MIT in its discovery requests), Professor Roe will not be able to use

16

such discovery to continue his retaliation against Doe and further damage his future career prospects. MIT's position is not that the rest of the protective order prevents him from doing so (it does not); rather, incredibly, they have openly stated it is expected that Roe *will* continue to share his impressions of Doe with prospective employers to aid in their hiring efforts, including providing "honest, critical feedback" (read: disparagement). This follows admissions in its written discovery responses that "Roe withdrew letters [of recommendation for Doe] after the time when he had learned of Plaintiff's complaints about discrimination or harassment relating to Roe's research group." Def. MIT's Resp. to Pl.'s First Set of Requests for Admission at 12-13 (Apr. 29, 2026).

MIT also admitted that "Roe communicated with faculty working for prospective employers describing Plaintiff's job performance after the time when Roe learned of Plaintiff's complaints about discrimination or harassment relating to Roe's research group," *id*., including at least one "Zoom call with a representative of [another university] about Plaintiff's candidacy," Def. MIT's Resp. to Pltf.'s First Set of Interrogs. at 19-20 (Apr. 15, 2026). Upon information and belief, Plaintiff lost that job opportunity at the last minute explicitly because of Professor Roe's retaliatory intervention. After a successful final-round interview, Plaintiff was informed by the relevant department chair at that university that the position was his, and that the department was discussing budgets and timeline and would follow up with an offer letter after the formal completion of their interview process. But after weeks of silence—just after MIT administrators discussed with Professor Roe that Plaintiff had lodged complaints of harassment and discrimination against him—Plaintiff learned that Roe had contacted the other university to withdraw his recommendation of Plaintiff, and that the university was therefore no longer going to offer Doe the job. The job was instead given to a significantly less qualified candidate. Doe also

has in his possession documentary evidence that Professor Roe disparaged him to a prominent colleague in the field *the day after* MIT administrators communicated with Roe about Doe's allegations of discrimination against him, as alleged in FAC ¶ 257-258.

It is troubling that MIT is unwilling to commit to a reasonable provision to ensure that its own employee may not engage in the misuse of confidential discovery material or further unlawful retaliation against Plaintiff—who is also MIT's employee, and who simply exercised his right to report workplace harassment.[10] Professor Roe has no legitimate interest in disparaging Plaintiff to prospective employers or in using confidential discovery information as a hit list to *initiate* communications about Plaintiff with prospective employers that are all but guaranteed to be disparaging in nature. Contrary to MIT's efforts to paint Plaintiff's proposed language as a sweeping restriction on Professor Roe's speech, those narrowly defined (and plainly inappropriate) actions are the *only* ones that this provision would prevent. This language is needed because other provisions in the protective order do not, as MIT implies, restrict Roe's ability to improperly use discovery information disclosed to him by MIT. They only limit the contexts in which *MIT* can share such information *with Roe* (i.e., to prep him for deposition). Plaintiff's proposed language is crucial to prevent Roe from then using this sensitive discovery material to identify institutions where Doe is seeking a position and contacting those institutions to kill Doe's chances—*as he has already done*.

MIT's reassurances that Professor Roe is aware of his obligations not to retaliate offer no consolation, since MIT, in its written discovery responses, contests that the above-described actions by Roe constitute retaliation—asserting that Roe's withdrawal of recommendation letters

---

[10] MIT has not explained why it cannot exercise control over Professor Roe, its employee, in relation to conduct that falls directly within the scope of his employment and capacity as a supervisor: serving as a reference for another, subordinate employee of MIT.

and disparaging comments about Plaintiff to prospective employers, immediately after learning of Plaintiff's complaints of discrimination against him, were "not related to Plaintiff's complaints." Def. MIT's Resp. to Pl.'s First Set of Requests for Admission at 12-13 (Apr. 29, 2026). Professor Roe's retaliation has already materially damaged Plaintiff's reputation and career prospects. He will suffer further irreparable harm if Roe is able to continue to poison the well to every potential employer in Plaintiff's field—and MIT has indicated it has no intention of stopping him from doing so.

Plaintiff respectfully requests that the Court enter a protective order with Plaintiff Doe's proposed Paragraph 16.

## CONCLUSION

For the foregoing reasons, the parties respectfully request that the court rule on the disputed issues related to Paragraphs 15 and 16 and enter a protective order in this case.

Date: May 15, 2026                                    Respectfully submitted,

 /s/ Paul M. Eckles                                  /s/ Ishan K. Bhabha
Richard A. Rosen (*pro hac vice*)                    Ishan K. Bhabha (*pro hac vice*)
rrosen@brandeiscenter.com                            IBhabha@jenner.com
Paul M. Eckles (*pro hac vice*)                      202.637.6327
peckles@brandeiscenter.com                           Lauren J. Hartz (*pro hac vice*)
Rebecca L. Harris (*pro hac vice*)                   LHartz@jenner.com
rharris@brandeiscenter.com                           202.637.6363
THE LOUIS D. BRANDEIS CENTER FOR                     Elizabeth Henthorne (*pro hac vice*)
 HUMAN RIGHTS UNDER LAW                               Bhenthorne@jenner.com
1675 Broadway, Fl. 13                                202.637.6367
New York, NY 10019                                   JENNER & BLOCK LLP
332.278.9174                                         1099 New York Avenue, N.W., Ste. 900
                                                     Washington, DC 20001-4412
Jonathan D. Polkes (*pro hac vice*)
jonathan.polkes@whitecase.com
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020-1095                        Daniel J. Cloherty (BBO# 565772)
212.819.8200                                         dcloherty@clohertysteinberg.com
                                                     617.481.0610
Rachel Rodman (*pro hac vice*)                       CLOHERTY & STEINBERG LLP
rachel.rodman@whitecase.com                          One Financial Center, Suite 1120
Mark Davies (*pro hac vice*)                         Boston, MA 02111
mark.davies@whitecase.com
WHITE & CASE LLP
701 Thirteenth Street, NW                            *Attorneys for Defendant Massachusetts*
Washington, DC 20005-3807                            *Institute of Technology*
202.626.3600

Veronica Gordon (*pro hac vice*)
veronica.gordon@whitecase.com
200 S. Biscayne Blvd.
Miami, Florida 33131
305.371.2700

Philip Y. Brown (BBO #552366)
pbrown@browncounsel.com
Amelia R. Gray (BBO #675632)
agray@browncounsel.com
BROWN COUNSEL, LLC
One Marina Park Drive, 1410
Boston, MA 02210
617.683.1500

*Attorneys for Plaintiff John Doe*

20