UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| WILLIAM SUSSMAN, et al.,<br><br>    *Plaintiffs*,<br><br>  v.<br><br>MASSACHUSETTS INSTITUTE OF<br>TECHNOLOGY and MICHEL DEGRAFF,<br><br>    *Defendants.* | Case No. 1:25-cv-11826-RGS |

**STIPULATED ORDER**
**REGARDING THE PROTOCOL GOVERNING THE PRODUCTION OF**
**DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**

IT IS HEREBY STIPULATED by and between Plaintiff John Doe and Defendant Massachusetts Institute of Technology (the "parties," and each individually a "party"), by and through their counsel of record, as follows:

WHEREAS, documents and information have been and may be sought, produced or exhibited by and among the parties to this action.

WHEREFORE, the parties seek an Order of this Court entering the parties' agreements on discovery of electronically stored information ("ESI"), as reflected in the following terms:

1. This Order regarding the protocol governing the production of documents and Electronically Stored Information (the "Order") shall govern and specify the form of the production of documents and ESI by the parties in the above-captioned litigation as a supplement to the Federal Rules of Civil Procedure, this Court's rules, and any other applicable orders and rules in cases filed in or consolidated before this Court in this action.

2. The production of Hard Copy Documents or Electronic Files in a manner consistent with the specifications set forth in this Order shall, absent exceptional circumstances,

be sufficient to satisfy a Producing Party's obligation to produce its materials in reasonably useable form and as they are maintained in the ordinary course of business.  This Order does not alter or expand the discovery obligations or rights of any party.  All parties reserve all rights under the Federal Rules of Civil Procedure and the Federal Rules of Evidence for matters relating to the discovery and production of ESI.

3.      As outlined in Federal Rule of Civil Procedure 26(b)(2)(B), a Producing Party need not provide discovery of ESI from sources that it identifies as not reasonably accessible because of undue burden or cost.  If a Producing Party objects to production of particular ESI as not being reasonably accessible because of undue burden or cost, such Party shall describe the nature of the objection with reasonable particularity via letter.  The Parties shall promptly meet and confer thereafter in an attempt to resolve the issue concerning accessibility and, if no resolution is reached, seek appropriate relief from the Court as outlined in Federal Rule of Civil Procedure 26(b)(2)(B).

4.      All discovery produced in this action shall be subject to the terms of the Protective Order entered by the Court, as well as Federal Rule of Civil Procedure 26(b)(5)(B).

5.      **Definitions**

a.  "Document" shall have the meaning contemplated by Rule 26.5(C)(2) of the Local District Rules for the United States District Court for the District of Massachusetts ("Local Rules") and Federal Rule of Civil Procedure 34(a)(1)(A).  A draft or non-identical copy is a separate Document within the meaning of this term.

b.  "Electronic File" means a computer-generated file that is maintained in electronic form in the usual course of business.  Electronic Files include, but are not limited to, emails (e.g., .msg, .eml), text messages, social media and chat messages, spreadsheet files (e.g., .xls, .xlsx), slide presentation files (e.g., .ppt), word processing and text files (e.g., .doc, .docx, .txt), image

2

files (e.g., .pdf, .jpg, .jpeg, .png), audio or video files (e.g., .mp3, .mp4, .mov, .wav, .mpeg), and container files (e.g., .pst, .zip).

c. "Electronically Stored Information" or "ESI" shall have the meaning contemplated in Federal Rule of Civil Procedure 34(a)(1)(A).

d. "Hard Copy Document" means a document that is maintained in hard copy or paper form.

e. "Metadata" means structured information about ESI that is created by the file system or application, embedded in the Document or ESI, and sometimes modified through ordinary business use.

f. "Producing Party" means a party that produces Hard Copy Documents, Electronic Files, or other material in connection with this litigation in response to document requests, compulsory process, or voluntarily.

g. "Receiving Party" means a party that receives Hard Copy Documents, Electronic Files, or other material from a Producing Party in connection with this litigation.

6. **Production Format Specifications**

a. **General Form of Production**.  Except as provided in Sections 6.b, 6.c, and 6.j, all Electronic Files and Hard Copy Documents shall be produced as single-page, black and white, Group IV TIFF image files with the associated text and metadata specified in this Section 6.a.  If a party has already produced a document as an Electronic File, it is under no obligation to produce the same document in hard copy.  To the extent any party is required or agrees to re-produce documents that originally were produced or prepared for production in another case or government investigation, such documents may be produced in the same format in which they originally were produced or prepared for production, along with any produced metadata.

3

i.    **Image Requirements**.  TIFF image files shall be of at least 300 dpi resolution.  The page orientation (i.e., portrait or landscape) of a TIFF image file shall be the same as the underlying document from which the TIFF image is created.  The page size of a TIFF image file shall be 8.5 x 11 inches unless, in the reasonable judgment of the Producing Party, a particular document requires a different page size.  Each TIFF image shall be branded with a Bates number that must: (1) be unique across the entire document production; (2) maintain a constant length of seven numeric digits (including 0-padding) across the entire production; (3) be sequential within a given document; and (4) include a three-letter prefix identifying the Producing Party followed by a single-dash or underscore (e.g., MIT or DOE). Each TIFF image file shall be named with the same page-level Bates number branded on the underlying image.

ii.    **Text Requirements**.  All Electronic Files and Hard Copy Documents shall be produced with a corresponding multipage text file (i.e., one .TXT file per Electronic File or Hard Copy Document as opposed to one text file per page).  The text file for an Electronic File shall be created by extracting text directly from the underlying native file, unless the Electronic File must be redacted prior to production, in which case the text file shall be generated by applying industry standard OCR technology to the redacted version of the Electronic File. The text file for Hard Copy Documents shall also be created using industry standard OCR technology.  Each text file shall be named with the beginning Bates number of the Electronic File or Hard Copy Document to which the text file relates.

iii.    **Metadata Requirements**.  Electronic Files shall be produced with the metadata specified in Exhibit A to this Order, to the extent such information is reasonably available, unless such metadata contains information subject to attorney-client privilege, work product protection, common interest privilege, associational privilege, any other applicable

privilege or protection.  Hard Copy Documents shall be produced with the metadata specified in Exhibit B to this Order.  However, the parties recognize that for a limited set of documents— typically documents collected on a one-off basis—the complete lists of metadata in Exhibits A and B may not be readily available, reasonably collectable, or ascertained and therefore may not be produced.  The parties agree to consider in good faith requests for the metadata in Exhibits A and B if not initially produced.

b.  **When Native Production Is Required**.  Unless redaction is necessary, the following types of Electronic Files shall be produced in native format, whether they exist as attachments to emails, embedded files, or standalone files: (1) spreadsheet files (e.g., .xls, .xlsx, .csv and similar files); (2) Microsoft Access files; and (3) audio or video files (e.g., .mp3, .mp4, .mov, .wav, .mpeg and similar files).  If redactions of spreadsheet files is necessary, then the files may be produced in TIFF in accordance with Section 6.a so long as the files are TIFFed in a manner that will yield production of all non-redacted content, including, as examples, speaker's notes, hidden rows and columns, and comments.  Spreadsheet files may also be redacted in native format.  Any party electing to redact a spreadsheet in native format must indicate, upon request, which spreadsheets were redacted in native format and specify and explain what content was redacted if not readily apparent from the face of the redacted spreadsheet.  The parties must maintain an unaltered, unredacted version of the spreadsheet until the final disposition of the litigation, and nothing in this Order waives the right of either party to challenge the scope or permissibility of any redactions.  If the parties encounter Microsoft Access files or audio or video files containing privileged content, the parties shall meet and confer to determine a suitable manner of producing the non-privileged content contained in these files.

c.  **When Native May Be Requested**.  A party may also request that an Electronic File originally produced in TIFF pursuant to Section 6.a be produced in native format.  A

Producing Party shall honor such a request where the TIFF version of the Electronic Document omits relevant, substantive content included in the native file or where the TIFF version suffers material, adverse formatting changes as a result of the conversion to TIFF, such as the loss of meaningful color distinctions.

d. **Production Specifications for Native Files**. When producing an Electronic File in native form pursuant to Section 6.b or 6.c, a producing party shall: (i) provide a corresponding single-page TIFF placeholder stating "Document Produced in Native" and branded with a Bates number meeting the requirements of Section 6.a.i; (ii) name the produced version of the electronic file with the Bates number affixed to the TIFF placeholder corresponding to the electronic file; and (iii) provide the text and metadata, including the original file name of the underlying Electronic File, required under Section 6.a of this Order.

e. **Load Files**. All productions of Electronic Files and Hard Copy Documents shall be accompanied with data load files and image load files. Each Producing Party shall provide data and image load files in a format that is reasonably necessary to allow a Receiving Party to load productions to its document review or case management database.

f. **Family Relationships of Electronic Files**. Parent-child relationships between Electronic Files (i.e., the association between an attachment and its parent e-mail) must be preserved by assigning sequential Bates numbers to all files within a parent-child group, and by providing accurate attachment ranges for those files in the metadata fields required by Exhibit A.

g. **Scanning and Unitization Requirements for Hard Copy Documents**. The parties agree to use reasonable efforts to ensure that Hard Copy Documents are unitized such that: (i) multiple, distinct documents are not merged into a document range; and (ii) distinct documents are not split into multiple document ranges. The parties also agree to use reasonable efforts to maintain the family relationships of Hard Copy Documents by scanning and Bates

numbering those documents in sequential order.  This provision does not obligate any party to produce documents in a manner other than that in which those documents were kept in the ordinary course of business.

h.  **Structured Data / Enterprise Level Databases**.  To the extent a discovery response requires production of ESI maintained in a database, and the responsive data cannot reasonably be produced in a format such as Excel or .csv, this Order does not govern the manner in which such information must be produced.  The parties shall meet and confer, as necessary, regarding the production format of information maintained in such databases.

i.  **Preservation of Metadata**.  The parties shall use industry standard technology and processes to preserve the metadata required to be produced for Electronic Files under Section 6.a.iii of this Order.  Nothing in this Order is intended to permit a party to convert a file that is ordinarily maintained as an Electronic File to a Hard Copy Document for production in this litigation.

j.  **Error Files**.  If a responsive Electronic File otherwise subject to production in TIFF under this Order cannot be converted to TIFF without error due to corruption, password protection, or some other issue, the Electronic File shall be produced as a TIFF placeholder stating "Document could not be imaged."

k.  **Production of Container Files**.  The parties need not produce container files (e.g., .zip) so long as the responsive contents of those files are produced in accordance with the specifications of this Order.

l.  **De-duplication**.  A party may use industry standard technology to remove exact duplicates (based on MD5 Hash Values or a reasonably equivalent alternative) from its production of Electronic Files so long as all custodians who possessed copies of a given file and for whom a Producing Party has agreed or is obligated to produce documents are identified in the

7

CUSTODIAN, DUPCUSTODIAN, and/or ALLCUSTODIAN fields.  Electronic Files and attachments may only be de-duplicated on message unit or family basis.  A party may also use industry standard message threading technology to remove email messages where the content of those messages, and any attachments, are wholly contained within a later email message.  Upon request of a Receiving Party, a Producing Party shall identify the technology it is using to de-duplicate or thread its document production.

m. **Text for Redaction Boxes**.  With the exception of native redactions to spreadsheets, as specified in Section 6.b of this Order, the parties will specify on the face of their redactions the basis of the redactions (stating, e.g., "Redacted for Privilege").  The parties will not use black-box redactions.  The parties must maintain unaltered, unredacted versions of any redacted documents until the final disposition of the litigation.  Highlights or similar markings relating to maintenance of pseudonymity, which do not obscure the information, shall be applied in accordance with the process set forth in the Protective Order.   A Producing Party is not required to highlight or otherwise mark the following Identifying Information: information in the From/To/Cc/Bcc, subject line, or file name fields; information in the signature block of an email; names, titles, or affiliations of individuals appearing in the body of a document; and references to the two MIT departments where Plaintiff Doe has held positions of employment.  The Receiving Party is nonetheless required to treat all such Identifying Information in accordance with the provisions set forth in the Protective Order.

n. **Original Language**.  All documents shall be produced in their original language. All extracted text must be produced in a Unicode compliant format in the load file.  Nothing in this Order shall require a Producing Party to prepare a translation, certified or otherwise, for foreign language documents that are produced in discovery.

8

o. **Request Identification**.  Production of documents as set out in this Order need not include any reference to the requests to which a document or ESI may be responsive.

7.    **Privilege Logs**.  The parties shall meet and confer and attempt to reach agreement regarding the production of a privilege log for any documents withheld or redacted for attorney-client privilege, work product protection, common interest privilege, associational privilege, or any other applicable privilege or protection.

8.    **Method of Production**.  A party shall produce its Electronic Files and/or Hard Copy Documents via secure FTP or on electronic storage media such as CDs, DVDs, or USB hard drives.  Each piece of electronic storage media shall be assigned a sequential volume number that identifies the party to whom the volume is attributable.

9.    **Non-Party Discovery**.  Any party that issues a non-party subpoena shall include a copy of this Order as part of the subpoena and shall request that the non-party produce documents in accordance with the specifications set forth herein.  The party issuing the non-party subpoena is responsible for producing to all other parties any documents obtained pursuant to that non-party subpoena, in the format in which they were produced by the non-party.

10.    **Custodians and Search Terms**.  The parties shall attempt to reach agreement on the appropriate custodians, and each shall provide reasonable information concerning custodians upon request to allow the parties to facilitate these discussions.  To achieve proportional and cost-effective discovery, the parties agree that limitations on the scope of the search (e.g., time frames, document types, keywords, etc.) may be employed by the parties to reasonably cull out nonresponsive information.  If search terms are used, the Producing Party will disclose those search terms to the Receiving Party upon request.  If the Receiving Party in good faith believes additional search terms are likely to yield additional unique, relevant information, the Receiving Party may propose additional search terms, and the parties shall meet and confer.  If disputes still

exist at the end of the meet-and-confer process, the parties will submit those disputes to the Court in the form of a joint discovery letter with a discussion of the relevance and/or burden associated with the additional requested search terms.  If some other or additional method of limitation is used to cull responsive data, including predictive coding through technology-assisted review ("TAR"), or generative artificial intelligence (AI) tools, the Producing Party will disclose the method to the Receiving Party upon request.

11.    **Modification**.  The requirements of this Order may be modified by agreement of the parties or upon further order of the Court for good cause shown.

12.    **Meet and Confer Obligations**.  No party may seek relief from the Court regarding compliance or non-compliance with this Order unless it has first met-and-conferred in good faith with the other party and the parties are unable to resolve the matter without Court intervention.


IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.


Dated:  June 1, 2026

*/s/ Paul M. Eckles*_____
Paul M. Eckles
*Attorney for Plaintiff John Doe*

*/s/ Ishan K. Bhabha*_____
Ishan K. Bhabha
*Attorney for Defendant*
*Massachusetts Institute of Technology*


IT IS SO ORDERED:


Dated:  6/2/2026 _____

/s/ Richard G. Stearns
_____
Hon. Richard G. Stearns